EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>             v.<br><br> Francisco Soler Antonsanti<br> y Alexis Caraballo Hernández<br><br>      Peticionarios | Certiorari<br><br>2004 TSPR 165<br><br>162 DPR \_\_\_\_ |

Número del Caso: CC-2004-84

Fecha: 28 de octubre de 2004

Tribunal de Circuito de Apelaciones:

                  Circuito Regional V

Panel integrado por su Presidente, el Juez Brau Ramírez, el Juez
Aponte Hernández y la Jueza Pabón Charneco

Abogados de la Parte Peticionaria:

                  Lcdo. Martín González Vázquez
                  Lcdo. Luis A. Montañez del Valle

Oficina del Procurador General:

                  Lcda. Yasmín Chaves Dávila
                  Procuradora General Auxiliar

Materia: Art. 404 LSC

Este documento constituye un documento oficial del Tribunal Supremo
que está sujeto a los cambios y correcciones del proceso de
compilación y publicación oficial de las decisiones del Tribunal. Su
distribución electrónica se hace como un servicio público a la
comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

    v.                           CC-2004-84

Francisco Soler Antonsanti
Y Alexis Caraballo Hernández

    Peticionarios

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 28 de octubre de 2004

Nos corresponde resolver si la Ley de la Judicatura de 1994[1] y la garantía constitucional al debido proceso de ley[2] le imponen la obligación al Tribunal de Primera Instancia de grabar los procedimientos durante la vista preliminar de determinación de causa probable para acusar.

---

[1] Ley Núm. 1 de 28 de julio de 1994, 4 L.P.R.A. sec. 22 *et seq*. (en adelante Ley de la Judicatura de 1994). Esta ley fue derogada por la Ley Núm. 201 de 22 de agosto de 2003, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (en adelante Ley de la Judicatura de 2003). No obstante, para la fecha pertinente a los hechos del caso de autos, 11 de agosto de 2003, estaba vigente la Ley de la Judicatura de 1994, *supra*.

[2] Const. E.L.A., Art. II, Sec. 7.

I

Los Sres. Francisco Soler Antonsanti y Alexis Caraballo Hernández fueron denunciados por infracción al Art. 404 de la Ley de Sustancias Controladas.[3] Llamado el caso para la vista preliminar, la representación legal del señor Soler Antonsanti solicitó que se le permitiese grabar la vista con su propia grabadora. Posteriormente, al tomársele juramento a la testigo del Ministerio Público, la defensa del señor Soler Antonsanti solicitó que el tribunal se constituyese en uno de récord para que los procedimientos fuesen grabados oficialmente. Señaló que, al amparo del Art. 5.001 de la Ley de la Judicatura de 1994,[4] el Tribunal de Primera Instancia tenía que grabar todos los procedimientos en la eventualidad de que su cliente tuviese que solicitar la revisión y para ello necesitase contar con una transcripción oficial. El foro de instancia denegó la solicitud de la defensa al concluir que por no tratarse la vista preliminar de un juicio, su grabación no era compulsoria.

Oportunamente, los señores Soler Antonsanti y Caraballo Hernández acudieron al Tribunal de Apelaciones. Alegaron que el foro de instancia erró al declinar

---

[3] Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 L.P.R.A. sec. 2404.

[4] 4 L.P.R.A. sec. 22m. Esta sección dispone que "[e]l Tribunal de Primera Instancia será un tribunal de récord".

constituirse en un tribunal de récord en contravención al Art. 5.001 de la Ley de la Judicatura de 1994, *supra*. Alegaron, además, que dicha actuación infringió su derecho al debido proceso de ley. El Ministerio Público, por su parte, señaló que la Ley de la Judicatura de 1994, *supra*, el Reglamento del Tribunal de Circuito de Apelaciones de 1996 –entonces vigente–[5] y las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establecen alternativas para que las partes obtengan un récord adecuado de los incidentes de la vista preliminar, de manera que se garantice la preparación adecuada de los procedimientos apelativos al amparo del debido proceso de ley. Sostuvo, asimismo, que la Ley de la Judicatura de 1994, *supra*, no imponía obligación alguna a la Rama Judicial para grabar los procedimientos preliminares dentro del proceso criminal.

Visto lo anterior, el tribunal intermedio denegó el recurso solicitado y ordenó la continuación de los procedimientos ante el foro de instancia. Inconformes, los señores Soler Antonsanti y Caraballo Hernández presentaron una solicitud de *certiorari* ante nos. Atendida su petición, expedimos el auto solicitado. Con el beneficio de la comparecencia de las partes, resolvemos.

---

[5] 4 L.P.R.A. Ap. XXII-A. El citado reglamento fue derogado por el Reglamento del Tribunal de Apelaciones aprobado el 21 de julio de 2004, 2004 TSPR 121.

II

A

El concepto de "tribunal de récord" es de antiguo cuño en nuestro ordenamiento jurídico. La utilización de este término se remonta a la época en que se aprobó la Constitución del Estado Libre Asociado de Puerto Rico y la subsiguiente reforma al sistema judicial para conformarlo con las nuevas disposiciones constitucionales. *Véase*, J. Trías Monge, *El Sistema Judicial de Puerto Rico*, Ed. Universitaria, 1978, págs. 132 *et seq*. Parte de dicha reforma fue la Ley Núm. 11 de 24 de julio de 1952, conocida como la Ley de la Judicatura de 1952, en la que se estableció que el Tribunal Superior y el de Distrito constituirían tribunales de récord. En el Informe preparado por el comité encargado de redactar el anteproyecto de la Ley de la Judicatura de 1952, *supra*, se indicó al respecto que:

> En el pasado las extintas cortes municipales y de paz no eran cortes de récord. Debido a que carecían de esta dignidad, y debido a que sus sentencias estaban sujetas a ser dejadas totalmente sin efecto por el juicio *de novo*, eran tenidas como cortes sin importancia o se entendía que no eran dignas de respeto por parte de las otras cortes. De conformidad con uno de los mayores objetivos de esta Ley, que es el de elevar la dignidad, prestigio e importancia de las "cortes inferiores", la nueva Corte de Distrito se establece como una de récord. **Esto no significa que todos los detalles de sus procedimientos deben ser tomados taquigráficamente. En el pasado el término significaba meramente que se pondría por escrito una relación de lo que la corte había hecho. Dicho requisito, en su equivalente**

**moderno era desde luego cumplido aun por las cortes eliminadas por esta Ley [de 1952], ya que exigía y** se guardaba un récord permanente de sus sentencias. Bajo las condiciones modernas de llevar un récord completo, ese requisito, cumplido tan fácilmente, no se considera por sí solo suficiente para que una corte merezca el mayor respeto que se le da a una corte de récord completo; el historial local de ahora, y más significativamente aún, la manifiesta intención de la Legislatura, se tienen en mente al determinar el status de la corte en cuestión. De manera que aquí la dignidad que debe merecer el nuevo sistema judicial es declarada oficialmente por la Legislatura. Committee of the Attorney General and the Supreme Court, *Report on the Judiciary Act of Puerto Rico of 1952*, págs. 9-10. (Citas omitidas, traducción nuestra y énfasis suplido).

Uno de los cambios de mayor trascendencia introducidos por la Ley de la Judicatura de 1952, *supra*, fue precisamente la eliminación del juicio *de novo* en las apelaciones del Tribunal de Distrito al Superior y su sustitución por una revisión exclusivamente a la luz del récord ante el Tribunal de Distrito. Trías Monge, *supra*, a la pág. 138. La Asamblea Legislativa entendió que la apelación fundamentada en el expediente sería más justa y eficiente; armonizaría más con la unificación del Tribunal de Primera Instancia –ya que éste se compondría de dos (2) secciones y no habría tribunales separados–;[6] y realzaría el prestigio y la dignidad de los anteriores jueces municipales. González v. Tribunal Superior, 75 D.P.R. 585, 611-612 (1953). Así, la Sec. 19 de la Ley de la Judicatura de 1952, 4 L.P.R.A. sec. 122 (Supl. 1965), dispuso que la

---

[6] Ello en vista de que antes de ser aprobada la Ley de la Judicatura de 1952, *supra*, existían el Tribunal de Distrito, elTribunal Municipal y el Juzgado de Paz.

apelación del Tribunal de Distrito al Superior se haría por vía de revisión de la sentencia o actuación del tribunal recurrido y no mediante juicio *de novo*. Por lo tanto, se estableció el requisito de llevar un récord de los procedimientos de cada caso y la obligación del Administrador de los Tribunales de proveer grabadoras en las salas de los tribunales de distrito.

En lo pertinente, la Sec. 19, *supra*, dispuso:

Por la presente se establece el derecho a **apelar** al Tribunal Superior de cualquier **sentencia final** del Tribunal de Distrito.

...

**En todo caso el Juez proveerá un récord de todo lo ocurrido en el caso que será unido al expediente del mismo, a menos que la parte o las partes puedan preparar una transcripción de la evidencia.** Las partes deberán comunicarle al Juez dentro del término que se especifique por regla del Tribunal Supremo cualquier objeción que tengan tanto al récord del caso preparado por el juez como a la transcripción de la evidencia. El juez oirá y resolverá las objeciones. El Tribunal Supremo también reglamentará la concesión de nuevas vistas por el Tribunal de Distrito, al solicitársela prontamente, en aquellos casos en que las partes o sus abogados no hayan protegido adecuadamente sus derechos durante el juicio original de un caso o no se haya provisto un récord adecuado por el Juez.

**La oficina del Administrador de Tribunales proveerá a cada sala del Tribunal de Distrito de un equipo adecuado para grabar las incidencias de cada caso.** El juez podrá utilizar esta grabación al preparar la relación de lo ocurrido **durante el juicio** y la misma deberá ser elevada al Tribunal Superior cuando así lo solicite cualquiera de las partes. El Tribunal Superior cuando se alegue que la relación preparada por el Juez de Distrito es incorrecta, utilizará la grabación para resolver la apelación o para ordenar **un nuevo juicio** en el Tribunal de Distrito. (Énfasis suplido.)

Con relación a la Sec. 19 de la Ley de la Judicatura de 1952, *supra*, en el Informe sobre el anteproyecto de dicha ley se aclaró que el récord requerido por la citada sección debía incluir las alegaciones de la partes, los documentos presentados en el caso y un breve resumen hecho por el juez de lo acontecido durante el juicio. Específicamente, el Informe indicó que no se pretendía que el juez se convirtiese en un transcriptor, sino únicamente que preparase una reseña concisa de los testimonios presentados, de manera que el Tribunal Superior, al adjudicar la apelación, tuviese conocimiento de la evidencia que había sido considerada por el Tribunal de Distrito. La preparación de este récord por el juez sería requerida una vez se presentase el recurso de apelación. *Report on the Judiciary Act of Puerto Rico of 1952, supra,* págs. 23-24.

De lo anterior se puede colegir que el establecimiento del Tribunal de Primera Instancia como un tribunal de récord fue la consecuencia inmediata de la eliminación del juicio *de novo* al recurrirse en revisión del Tribunal de Distrito al Superior. De esta forma la revisión de las sentencias finales dictadas por el Tribunal de Distrito se haría mediante el recurso de apelación y estaría fundamentada únicamente en el expediente. La Asamblea Legislativa garantizó la existencia de algún tipo de récord de los procedimientos llevados a cabo en los tribunales,

mediante su grabación, la transcripción de la evidencia preparada por las partes o a través de las notas tomadas por el propio juez. **Esta garantía de perpetuar los incidentes procesales ante el Tribunal de Distrito mediante grabaciones electrónicas, según se colige del citado anteproyecto y de la Sec. 19 de la Ley de la Judicatura de 1952, *supra*, se entendió que <u>aplicaría solamente a la etapa del juicio</u>, en la eventualidad de que se apelase la sentencia. Es decir, el concepto de tribunal de récord no fue establecido con miras a perpetuar <u>mediante grabación</u> las etapas preliminares del procedimiento judicial.**

B

La designación de un tribunal como "tribunal de récord" lo que significa es que el mismo está obligado a mantener un registro permanente de los acontecimientos judiciales. *Véase*, *In re* Marriage of Case, 856 P.2d 169 (Kan. App. 1993); <u>Howard v. State</u>, 399 S.W.2d 738 (Tenn. 1966); <u>State *ex rel*. Davis v. Achor</u>, 75 N.E.2d 154 (Ind. 1947); <u>Page *et al*. V. Turcott</u>, 167 S.W.2d 350 (Tenn. 1943); <u>Chrisman v. Metropolitan Life Ins. Co.</u>, 157 S.W.2d 831 (Tenn. 1942). Ello no significa necesariamente que todos los procedimientos tienen que ser grabados electrónicamente. En los casos citados anteriormente se acoge la definición de "tribunal de récord" dispuesta en Black's Law Dictionary, a los efectos de que dicho concepto se refiere a un tribunal "whose acts and judicial

proceedings are enrolled, or recorded, for perpetual memory and testimony, and which have power to fine or imprison for contempt". Black's Law Dictionary, 4ta ed., Minn., Ed. West Publishing Co., 1951, págs. 425-426.[7]

El propósito de esta categorización es, para todos los efectos, realzar la importancia del tribunal al que se le designa como "de récord". Como se explica anteriormente, ese fue el fin con el que se categorizó así a los tribunales superiores en nuestra jurisdicción por la reforma judicial de 1952. *Véase,* Charles E. Clark y William D. Rogers, *The New Judiciary Act of Puerto Rico: A Definitive Court Reorganization*, 61 Yale L. Rev. 1147 (1952). Al estudiarse la ley de reforma judicial de Puerto Rico de 1952, los autores citados señalan con relación a este asunto que la intención de los redactores de dicha ley era que, cuando las partes no pudieran proveer un taquígrafo, el juez de instancia expusiera por escrito los incidentes del juicio. *Id.*, a la pág. 1162. Se aclara, además, que:

---

[7] Una versión más reciente del Black's Law Dictionary define "tribunal record" como:

A court that is required to keep a record of its proceedings and that may fine and imprison people for contempt. The court's records are presumed accurate and cannot be collaterally impeached.

[…]

That has proceedings taken down stenographically or otherwise documented. Black's Law Dictionary, 7ma ed., Minn., Ed. West Publishing Co., 1999, págs. 358, 1115.

> **There was some apparent feeling that the definition of both divisions of the Court of First Instance as courts "of record" necessitated a more formal record. But this is clearly a misunderstanding. The term originally signified merely that a record of what the court had done was enrolled in parchment. That requirement, in modern equivalent, was satisfied even by the courts now displaced under this Act, for a permanent record of their judgments was required and kept.** […] In view of the increased dignity intended for all divisions of the new court system of Puerto Rico, the legislative designation of courts of record was wholly appropriate, whatever the form of statement of the case history for the purpose of appellate review. *Id.*, a la pág. 1163. (Énfasis suplido).

Es decir, según se extendió el concepto a nuestra jurisdicción, "tribunal de récord" no implica que los procedimientos deban grabarse electrónicamente sino que bien puede el tribunal mantener un expediente permanente de éstos de alguna otra manera. Asimismo, se desprende de lo anterior que aún los anteriores Tribunales de Distritos, revisados *de novo* por los Tribunales Superiores, respondían a cabalidad al significado de "tribunal de récord" pues en éstos efectivamente se hacía constar por escrito una reseña de los procedimientos.

Valga apuntar, no obstante, que la Asamblea Legislativa de Puerto Rico le preocupó la efectividad de dejar la producción del récord del caso en manos de los jueces, quienes podrían no representar fielmente los sucesos judiciales ya sea por ineficiencia, imparcialidad o escasez de tiempo. Clark y Rogers, *supra*, a la pág. 1164. Fue a esta preocupación que respondió la inclusión de la

grabación electrónica para perpetuar la <u>vista del juicio en su fondo</u> ante el Tribunal de Distrito. *Id.*, a la pág. 1164. Al respecto se dispuso que:

> **La oficina del Administrador de Tribunales proveerá a cada sala del Tribunal de Distrito de un equipo adecuado para grabar las incidencias de cada caso.** El juez podrá utilizar esta grabación al preparar la relación de lo ocurrido **durante el <u>juicio</u>** y la misma deberá ser elevada al Tribunal Superior cuando así lo solicite cualquiera de las partes. **El Tribunal Superior cuando se alegue que la relación preparada por el Juez de Distrito es incorrecta, utilizará la grabación para resolver la apelación o para ordenar <u>un nuevo juicio</u>** en el Tribunal de Distrito. (Énfasis suplido.)

Esta fue una reglamentación de vanguardia que no tenía paralelo en otras jurisdicciones. *Id.*, a la pág. 1164. Empero, la utilización de equipo para grabar se impuso exclusivamente en cuanto a los incidentes del juicio propiamente dicho, a pesar de que la Ley de la Judicatura de 1652, *supra*, también concibió al tribunal de instancia como uno de "récord" para los demás procedimientos judiciales preliminares. Se deduce, por lo tanto, que el concepto de "tribunal de récord" se extendió a los procedimientos judiciales, <u>que no eran la vista del juicio en su fondo</u>, tal cual se definía en ese entonces sin requerimiento adicional, bastando algún tipo de constancia permanente como las notas del juez, por ejemplo.

En resumen, en su acepción original: (1) un "tribunal de récord" no necesariamente tenía que grabar sus procedimientos electrónicamente, sino que cumplía con su

propósito si mantenía de alguna manera un récord permanente de los incidentes judiciales ante su consideración; (2) aunque sí se convirtió el tribunal de instancia en un tribunal de récord con la Ley de la Judicatura de 1952, *supra*; (3) según se adoptó en Puerto Rico dicho concepto, la utilización de equipo para grabar las incidencias de los casos se limitó a la etapa de la vista del juicio en su fondo. Para entonces dicha exigencia de grabación no se extendió a procedimientos preliminares.

C

De otra parte, el referido concepto de "tribunal de récord" fue incluido, además, en otras leyes sobre reforma judicial. De esta forma, el Art. 5.001 de la Ley de la Judicatura de 1994, *supra*, estableció que el Tribunal de Primera Instancia sería un tribunal de récord. Cónsono con ello, el Art. 5.006, 4 L.P.R.A. sec. 22r, dispuso, en lo pertinente:

> Se autoriza el uso de grabadoras electrónicas en todo procedimiento de la competencia del Tribunal de Primera Instancia de Puerto Rico. Asimismo se autoriza la transcripción de dichas grabaciones mediante el uso de funcionarios del propio tribunal a los fines de revisar procedimientos de ese tribunal para cualquier recurso ante el Tribunal Supremo o el Tribunal de Circuito de Apelaciones de Puerto Rico y para cualquier otro uso de conformidad con la ley.[8] (Énfasis suplido.)

_____

[8] Los Arts. 4.001 y 5.001 de la Ley de la Judicatura de 2003, *supra*, establecieron, de igual forma, que tanto el Tribunal de Primera Instancia como el de Apelaciones constituirán tribunales de récord. En cuanto al foro de instancia, en específico, se dispone que éste "será un tribunal de récord mediante los mecanismos dispuestos por reglamentación del Tribunal Supremo". Art. 5.001 de la Ley

De la letra de la ley surge conspicuamente que el Art. 5.006, *supra*, contrario a lo alegado por los peticionarios, **únicamente <u>autorizó el uso</u> de grabadoras en los procedimientos que se ventilen en el tribunal de instancia.** Esto es consistente con el significado original del concepto de "tribunal de récord" adoptado en nuestra jurisdicción desde 1952. Como vemos, la citada disposición tampoco estableció como una obligación del foro judicial el llevar a cabo la grabación de <u>todos</u> los procedimientos ante el foro de instancia.

Ahora bien, ¿exige el debido proceso de ley la grabación de la vista preliminar?

III

A

Como es sabido, la génesis de la vista preliminar es estatutaria, no constitucional. <u>Pueblo v. Rodríguez Aponte</u>, 116 D.P.R. 654, 660 (1985). Esta etapa procesal tiene como función básica determinar la existencia de causa probable para creer que se ha cometido un delito y que el imputado lo ha cometido. Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 23. Su propósito es evitar que un ciudadano sea sometido arbitraria e injustificadamente a los rigores de un proceso criminal. <u>Pueblo v. Andaluz</u>

---

de la Judicatura de 2003, *supra*. Asimismo el Art. 5.006 de la citada ley autorizó el uso de grabadoras electrónicas en los procedimientos que se lleven a cabo ante el foro de instancia y la transcripción de las grabaciones.

Méndez, 145 D.P.R. 656, 661 (1997).    Durante la vista preliminar el Ministerio Público debe presentar prueba, legalmente admisible en un juicio plenario, sobre todos los elementos del delito y su conexión con el imputado. Sin embargo, dicha vista **no es un mini juicio o un juicio preliminar**, por lo que una vez quedan establecidos todos los elementos del delito y la conexión del imputado con éste, se justifica una determinación de causa probable. Pueblo v. Ortiz, *supra*, pág. 375; Pueblo v. Rodríguez Aponte, *supra*, págs. 665, 667. Con esta determinación, el proceso criminal continúa hacia la etapa de su adjudicación final, es decir, al juicio en su fondo, que es el momento culminante del procesamiento criminal y al que la Constitución del Estado Libre Asociado de Puerto Rico se refiere de forma particular.

B

La vista preliminar ha sido descrita como "'el umbral del debido proceso de ley'. En ésta el imputado tiene un surtido limitado de derechos –estatutarios– que le cobijan". Pueblo v. Vega, *supra*, pág. 987.[9]  Una vez incorporados ciertos derechos, por actuación de la Asamblea Legislativa, éstos se convierten en parte integral del debido proceso de ley. *Id.* Así, el imputado tiene derecho a ser citado para la vista preliminar con por lo menos

---

[9]  Véase Olga Elena Resumil, Derecho Procesal Penal, Reglamentando la Vista Preliminar, 70 REV. JUR. U.P.R. 601 (2001).

cinco (5) días de antelación. Regla 23(a) de Procedimiento Criminal, *supra*. Además, tiene derecho a estar asistido por abogado durante la vista; a contrainterrogar los testigos en su contra y ofrecer prueba a su favor; a obtener la comparecencia compulsoria de testigos; y a recibir copia de las declaraciones juradas de los testigos del Ministerio Público que declaren en la vista. Pueblo v. Ortiz, *supra*, págs. 375-377; Pueblo v. Vega, *supra*, págs. 988-989.[10]

Como puede observarse, la Asamblea Legislativa, al incorporar estatutariamente en nuestro derecho procesal penal la etapa de la vista preliminar, no dispuso que el imputado tenga un derecho a la grabación de dichos procedimientos. Tampoco se ha incorporado esta garantía por vía jurisprudencial. *A contrario sensu*, como señalamos previamente, la Asamblea Legislativa estableció expresamente desde la aprobación de la Ley de la Judicatura de 1952, *supra*, que el tribunal de instancia constituiría un tribunal de récord, con el deber de grabar los procedimientos, únicamente en alusión directa a la etapa del juicio y no a los procedimientos preliminares. De hecho, tanto el Art. 5.006 de la Ley de la Judicatura de

---

[10] *Véase* Ernesto L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. III, Forum, Colombia, 1993, § 22.4, págs. 75-77; Dora Nevares-Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño*, Instituto para el Desarrollo del Derecho, San Juan, 4ta ed., 1995, págs. 91-92.

1994, *supra*, como el Art. 5.006 de la Ley de la Judicatura de 2003, *supra*, en consonancia con la misma filosofía de la Ley de la Judicatura de 1952, *supra*, se limitan a autorizar el uso de grabadoras durante todos los procedimientos judiciales. En vista de lo anterior, no podemos avalar el argumento de los peticionarios, señores Soler Antonsanti y Caraballo Hernández, a los efectos que el Art. 5.001 de la Ley de la Judicatura de 1994, *supra*, impone la obligación al Tribunal de Primera Instancia de grabar <u>todos</u> los procedimientos que allí se celebren. Tal no fue la intención con la incorporación en nuestro ordenamiento jurídico del concepto de "tribunal de récord".

Examinada la normativa aplicable, analicemos los hechos particulares del presente caso.

IV

Al momento de iniciar la vista preliminar contra los peticionarios, la representación legal del señor Soler Antonsanti llevó su propia grabadora y solicitó grabar los procedimientos. Del expediente no surge que el foro de instancia hubiese denegado esta solicitud. Luego de tomársele juramento a la testigo del Ministerio Público, el abogado de defensa del señor Soler Antonsanti solicitó que el tribunal se constituyese en uno de récord y que se grabasen los procedimientos en la eventualidad de que fuese necesario solicitar su revisión. El tribunal denegó la petición.

A la luz de lo discutido en torno a la naturaleza y función de la vista preliminar y del concepto del tribunal de récord, resolvemos que el foro de instancia no venía obligado a ordenar la grabación de los procedimientos. Concluimos, de igual forma, que a los señores Soler Antonsanti y Caraballo Hernández no se les infringió su derecho al debido proceso de ley. La representación legal de los peticionarios podía, como lo hizo, utilizar sus propias grabadoras y, en caso de que posteriormente solicitase revisar los procedimientos, preparar una exposición narrativa de la prueba oral o incluso solicitar que dicha grabación fuese admitida en evidencia.

No les asiste la razón a los peticionarios al alegar que "sólo mediante un récord oficial es que se puede constatar si el tribunal concernido obedeció la ley y si actuó de forma cónsona con el debido proceso de ley". En aquellos casos donde sea necesario revisar alguna determinación en la etapa de vista preliminar, nuestro ordenamiento provee alternativas para que el tribunal al que se recurre cuente con los elementos de juicio necesarios para adjudicar la revisión.[11] Las partes pueden

---

[11] Como es sabido, cualquier determinación de derecho relacionada con la vista preliminar puede ser revisada mediante *certiorari*. Pueblo v. Cruz Justiniano, *supra*, pág. 30. Además, en los casos en los que el Ministerio Público solicita una vista preliminar en alzada no ocurre la revisión del proceso anterior. Reiteradamente hemos indicado que la vista preliminar en alzada **no es una apelación de la primera, sino una independiente, separada y**

preparar una exposición narrativa de la prueba o una exposición estipulada y utilizar a esos fines sus propias grabaciones. Además, las grabaciones magnetofónicas tomadas por los abogados son admisibles en evidencia. *Véase*, Pueblo v. Hernández Santiago, 97 D.P.R. 522, 535-536 (1969).

En síntesis, resolvemos que ni la Ley de la Judicatura de 1994, *supra*, ni la garantía constitucional del debido proceso de ley, le imponen la obligación al Tribunal de Primera Instancia de grabar la celebración de la vista preliminar. Por lo tanto, confirmamos la sentencia emitida por el Tribunal de Apelaciones y devolvemos el caso al foro de instancia para la continuación de los procedimientos de forma consistente con lo aquí resuelto.

Federico Hernández Denton
Juez Presidente

---

**distinta**. Pueblo v. Cruz Justiniano, 116 D.P.R. 28, 30 (1984).  (Énfasis suplido.)

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                          CC-2004-84

Francisco Soler Antonsanti
Y Alexis Caraballo Hernández

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 28 de octubre de 2004.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se confirma la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma consistente con lo aquí resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente. Entiende que el Artículo 5.001 de la Ley de la Judicatura de Puerto Rico de 1994 dispuso que el Tribunal de Primera Instancia sería un tribunal de récord y su Artículo 5.006 dispuso sobre el uso de grabadoras electrónicas en **todo procedimiento** de la competencia de este tribunal. Autorizó, ese estatuto, la transcripción de dichas grabaciones mediante el uso de funcionarios de ese tribunal a los fines de revisar sus procedimientos ante los foros apelativos. El Juez Asociado señor Rivera Pérez es del criterio que dicho estatuto le otorgó a la ciudadanía **el derecho** a que lo acontecido en **todo procedimiento** ante el Tribunal de Primera Instancia constara en un sistema de grabación electrónica que pudiera ser transcrito de ser ese

CC-2004-84                - 2 -

el deseo del ciudadano que está insatisfecho con lo actuado por ese tribunal, y que pretende rebatir la presunción de corrección ante el foro apelativo. La Mayoría remueve ese **derecho estatutario** de los peticionarios por fiat judicial. El Juez Asociado señor Fuster Berlingeri no intervino.


                        Patricia Otón Olivieri
                     Secretaria del Tribunal Supremo