El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
En esta ocasión nos corresponde determinar si la Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, concede un derecho de exclusión automática del público de la sala de vista preliminar cuando el Ministerio Público se propone presentar el testimonio de un agente encubierto que aún se encuentra en funciones. Analizada esta interro-gante, concluimos que, si bien la disposición presenta una limitación al acceso del público en tales circunstancias, ella no procede de forma automática.
I
Los hechos del caso no están en controversia. Contra los recurridos(1) se presentaron múltiples denuncias por viola-ciones a la Ley de Armas de Puerto Rico, a la Ley para la Protección de la Propiedad Vehicular y a la Ley de Sustan- *973 cias Controladas de Puerto Rico. Hechas las correspon-dientes determinaciones de causa probable para arresto, el Tribunal de Primera Instancia, Sala Superior de Caguas, emitió una resolución en la que dividió a los imputados en cinco grupos, según las fechas cuando alegadamente se co-metieron los delitos, y señaló a cada grupo una fecha para la celebración de la vista preliminar.
Semanas después, el día de la celebración de la vista preliminar para los grupos I y II, el Ministerio Público se proponía presentar el testimonio de un agente encubierto, quien al parecer es el testigo principal de cargo en los casos de epígrafe. A tales efectos, el Ministerio Público solicitó, al amparo de la Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que se desalojara al público de ía sala para que el tribunal determinara si era necesario celebrar la vista preliminar en privado para proteger la identidád y seguridad del agente encubierto, quien alegadamente te-mía por su seguridad porque continuaba desempeñándose como tal en otras investigaciones. Los abogados de la de-fensa se opusieron a la solicitud, alegando que a sus repre-sentados les asistía el derecho a la vista preliminar pública. Tras examinar los argumentos de las partes, el foro de instancia denegó la solicitud del Ministerio Público por entender que era tardía.
Sin embargo, luego de un receso, el Ministerio Público insistió en su solicitud. Reiteró su preocupación por la se-guridad del agente y por la integridad de las investigacio-nes en curso en las que éste aún trabajaba. Además, adujo que no existe un término para solicitar que la vista preli-minar sea privada y que fue ese mismo día que supo que el agente aún tenía investigaciones pendientes y que temía por su seguridad. El Ministerio Público explicó que sólo ofrecería el testimonio del supervisor del agente encubierto para que el tribunal hiciera la determinación correspon-diente, por lo que la vista de necesidad solicitada no dila-taría los procedimientos. No obstante los fundamentos es-bozados, el tribunal se reafirmó en su decisión y ordenó dar *974 comienzo a la vista preliminar. En vista de ello, el Minis-terio Público solicitó que el tribunal emitiera su decisión por escrito para así acudir ante el Tribunal de Apelaciones.
A pesar de lo anterior y aun cuando el Ministerio Pú-blico informó no estar preparado sin el testimonio del agente encubierto, el tribunal insistió en la celebración de la vista preliminar. Procedió entonces a llamar la prueba correspondiente, no sin antes imponerle una sanción de quinientos dólares a cada fiscal por entender que no esta-ban preparados.
Ante esta situación, el agente encubierto entró a sala cubriendo su rostro con una capucha negra y escoltado por varios agentes. Acto seguido, el tribunal le inquirió si es-taba dispuesto a testificar sin la máscara, a lo cual el agente respondió en la negativa, debido a que temía por su vida. En vista de lo anterior, el foro de instancia determinó que existía una ausencia total de prueba y que, por lo tanto, no había causa probable para acusar a los imputa-dos de los grupos I y II. Entendió, además, que la solicitud del Ministerio Público sólo pretendía dilatar los procedi-mientos, ya que varias semanas atrás se habían acordado, con la anuencia del Ministerio Público, las fechas para ce-lebrar las vistas preliminares.
Por otro lado, días antes de la fecha señalada para la celebración de la vista preliminar correspondiente al grupo III, el Ministerio Público presentó una moción en la que, igual que en el caso de los grupos I y II, solicitó al foro de instancia que al inicio de la vista preliminar llevara a cabo una vista de necesidad para determinar si procedía la ex-clusión del público de la sala debido a la presentación del testimonio del agente encubierto. La defensa de los impu-tados se opuso a la solicitud del Ministerio Público, ale-gando que la naturaleza del procedimiento era pública, que los imputados tenían el derecho a un juicio justo e impar-cial y que el público tenía derecho a observar los procedimientos. A su vez, sostuvieron que la solicitud del Ministerio Público era tardía y que no les había sido notificada.
*975 En esta ocasión, el tribunal accedió a la solicitud del Ministerio Público de celebrar una vista de necesidad para determinar si procedía excluir al público del procedimiento por causa del testimonio del agente encubierto. Para ello, el Ministerio Público presentó el testimonio del agente Fé-lix Disdier González, quien al momento de su declaración trabajaba en la División de Drogas y Narcóticos de Caguas y aparentemente fungía como persona contacto con el tes-tigo encubierto. El agente declaró que el testigo encubierto se encontraba en funciones y realizaba investigaciones y transacciones relacionadas con el trasiego ilegal de sustan-cias controladas en el área de Caguas. Declaró, además, que el testigo había recibido amenazas en casos anteriores.
Tras escuchar este testimonio, el Tribunal de Primera Instancia determinó que no se justificaba la celebración de la vista preliminar en ausencia del público y la pospuso. El foro de instancia fundamentó su decisión en el derecho del acceso del público a la vista preliminar. Consideró, ade-más, el hecho de que en las denuncias figuraba el nombre del agente encubierto, por lo que su identidad y descripción física —según infirió el tribunal— ya habían sido reveladas.
Inconforme con las determinaciones anteriores, el Pro-curador General acudió al Tribunal de Apelaciones en re-cursos separados. Sostuvo que, en el caso de los grupos I y II, el tribunal de instancia erró al sostener que las deter-minaciones de no causa probable para acusar estaban fun-damentadas en una ausencia total de prueba y al determi-nar que la solicitud del Ministerio Público para celebrar la vista preliminar con exclusión del público era tardía. Por otro lado, en el caso del grupo III, el Procurador alegó que el foro de instancia erró al fundamentar su decisión en el derecho de acceso del público al juicio y no en el derecho del acusado a un juicio público. En ambos casos, el Procu-rador General argüyó que el tribunal erró al ignorar el lenguaje de la Regla 23(c) de Procedimiento Criminal, supra, que permite la exclusión del público en la vista preli-minar en casos como el de autos.
*976 El Tribunal de Apelaciones consolidó ambos recursos y, luego de los trámites de rigor, confirmó las determinacio-nes recurridas. En urna sentencia escueta, el foro apelativo —sin distinguir las circunstancias particulares de cada re-curso— concedió deferencia a los argumentos del Tribunal de Primera Instancia, consistentes en que la solicitud del Ministerio Público fue tardía y en que la prueba no esta-bleció los hechos necesarios para justificar la exclusión. El foro apielativo acogió, además, la inferencia del tribunal de instancia a los efectos de que tanto la identidad como la descripción física del agente habían sido reveladas ante-riormente, porque su nombre aparecía en las denuncias.
Insatisfecho con la determinación del Tribunal de Ape-laciones, el Procurador General acude ante nos mediante un recurso de certiorari y arguye —en esencia— que basta con que el Ministerio Público indique que se propone pre-sentar el testimonio de un agente encubierto para que el tribunal excluya al público de la sala de vista preliminar. Expone, además, que a los imputados no les asiste un de-recho constitucional a la vista preliminar pública y que éstos tienen la carga de demostrar que la celebración de la vista, o parte de ésta en privado, comprometería su dere-cho a un juicio justo e imparcial. Finalmente, aduce que no hay base para sostener que el Estado reveló la identidad del agente encubierto.
Por su parte, el recurrido Félix García Toledo, quien es parte del grupo III y único imputado que ha comparecido ante nosotros, alega que el Ministerio Público pretende convertir las disposiciones de la citada Regla 23(c) en una “patente de corso” para permitir la celebración de la vista preliminar en privado cada vez que el Estado se proponga presentar el testimonio de un agente encubierto. Lo anterior, según García Toledo, no considera que existe un dere-cho del acceso a la vista preliminar a favor del público y de la prensa, ni su derecho a que la vista preliminar sea pública. Sostiene, además, que como la norma general es la apertura de la vista preliminar, la parte que interese limi-tar el acceso a ésta —en este caso el Ministerio Público— *977 deberá demostrar las razones que así lo justifiquen. Según García Toledo, el Ministerio Público no cumplió con lo anterior durante la vista de necesidad celebrada en el caso del grupo III.
. Examinada la petición de certiorari presentada por el Procurador General, acordamos expedir. Con el beneficio de los argumentos de las partes, procedemos a resolver.
II
Como es sabido, nuestro ordenamiento reconoce como un derecho fundamental el de todo acusado a que el juicio que se celébre en su contra sea público. Este derecho proviene, expresamente del Art. II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, y de la Enmienda Sexta de la Constitución de EE.UU.
Sin embargo, el acusado no es el único acreedor del derecho fundamental a un juicio público, pues la ciudadanía y la prensa también pueden invocarlo para lograr el acceso a. dicho procedimiento. A diferencia del derecho a un juicio público que cobija al acusado, el derecho del público y de la prensa es más bien un derecho constitucional implícito, que encuentra su fundamento en los derechos a la libre expresión, asociación y libertad de prensa, garantizados por la Séc. 4 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1, y por la Primera Enmienda de la Constitución de Estados Unidos, así como en el derecho de acceso a la información en manos del Estado, el cual hemos reconocido en nuestra jurisdicción como corolario del derecho a la libre expresión. Véanse: López Vives v. Policía de P.R., 118 D.P.R. 219, 228 (1987); Soto v. Srio. de Justicia, 112 D.PR. 477, 488 (1982). Véanse, a modo ilustrativo: Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980); Véase, además, E.L. Chiesa Aponte, Derecho procesal pe *978 nal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1992, Vol. II, Secs. 13.1-13.2, págs. 185-205.
El carácter fundamental del derecho del acceso a los juicios penales a favor del público y de la prensa ha dado lugar a que se extienda este derecho a etapas anteriores al juicio. Específicamente, se ha reconocido que el derecho del acceso alcanza procedimientos como la vista preliminar. Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) (Press-Enterprise II).(2) Cónsono con lo anterior y según Press-Enterprise II, en El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147 (1993), el Tribunal Supremo de Estados Unidos declaró inconstitucional nuestra anterior Regla 23(c) de Procedimiento Criminal, supra, la cual disponía que la vista preliminar sería privada, a me-nos que al comenzar ésta el imputado solicitara lo contrario. De esta manera, se dejó sin efecto el dictamen emitido en El Vocero de P.R. v. E.L.A., 131 D.P.R. 356 (1992). Véase, a modo ilustrativo, Rivera-Puig v. GarcíaRosario, 983 F.2d 311 (1er Cir. 1992).
A la luz de lo resuelto por el Tribunal Supremo de Estados Unidos, la Asamblea Legislativa enmendó la Regla 23(c) de Procedimiento Criminal, supra, mediante la Ley Núm. 197 de 12 de agosto de 1995 para disponer que, como regla general, la vista preliminar será pública. De esta forma, la actual Regla 23(c), supra, dispone, en lo pertinente:
La vista preliminar será pública a menos que el magistrado determine, previa solicitud del imputado, que una vista pú-blica acarrea una probabilidad sustancial de menoscabo a su derecho constitucional a un juicio justo e imparcial, y que no hay disponibles otras alternativas menos abarcadoras y razo-nables que una vista privada para disipar tal probabilidad. En *979 tales casos, la decisión del magistrado deberá fundamentarse en forma precisa y detallada.
También se podrá limitar el acceso a la vista preliminar cuando el magistrado determine, previa solicitud a tales efec-tos, que tal limitación es necesaria para proteger cualquier otro interés de naturaleza apremiante y que no existen otras alternativas menos abarcadoras y razonables. La decisión del magistrado deberá fundamentarse en forma precisa y detallada.
Se dispone que el magistrado deberá limitar el acceso a la vista preliminar, previa solicitud del fiscal, en aquellos casos en que éste interese presentar el testimonio de un agente en-cubierto o un confidente que aún se encuentre en funciones o cuando esté declarando la víctima de un caso de violación o actos impúdicos o lascivos. (Énfasis suplido.)
Claramente, del texto transcrito se colige que, como re-gla general, la vista preliminar es de carácter público. No obstante, el precepto enumera expresamente cuatro excep-ciones a dicha norma, a saber: (1) para proteger el derecho constitucional del imputado a un juicio justo e imparcial; (2) cuando la vista privada sea necesaria para proteger cualquier otro interés de naturaleza apremiante; (3) cuando el Ministerio Público interese presentar el testimo-nio de un agente encubierto o un confidente que aún se encuentre en funciones, y (4) cuando esté declarando la víctima de un caso de violación o de actos impúdicos o lascivos. En los primeros dos casos, la regla exige una de-terminación previa por parte del tribunal sobre la necesi-dad de la limitación al acceso del público y sobre la dispo-nibilidad de otras alternativas menos abarcadoras que la vista privada. Tal determinación, según lo exige el propio estatuto, debe fundamentarse de forma precisa y detallada.
Ahora bien, el sentido literal de los incisos (3) y (4) pa-rece sugerir que no se requiere una determinación previa sobre la necesidad de la limitación del acceso del público ni sobre la disponibilidad de otras alternativas menos abarcadoras. Amparándose en ello, el Procurador General alega, en esencia, que la Regla 23(c), supra, establece un *980 derecho automático a favor del Estado que lo faculta a ex-cluir al público de la sala de vista preliminar cada vez que se proponga presentar el testimonio de un agente encubierto. Aduce que basta con que el Ministerio Público exprese que dicho agente testificará, para que el tribunal deba excluir al público de la sala. No estamos de acuerdo.
De un examen de la Exposición de Motivos de la Ley Núm. 197, supra, notamos que la Asamblea Legislativa expresó cuál era el objetivo de sus enmiendas a la Regla 23(c) de Procedimiento Criminal, supra:
Resulta imprescindible atemperar las disposiciones de la Re-gla 23 con la reciente determinación del Tribunal Supremo Federal para evitar la situación de que diferentes jueces puedan darle diferente interpretación a dicha decisión. Las enmiendas incorporadas al estatuto tienen el propósito de aclarar el al-cance de la determinación jurisprudencial, brindando así uni-formidad en el procedimiento criminal. (Enfasis suplido.) 1995 (Parte 1) Leyes de Puerto Rico 976, 977.
En iguales términos se consignó la intención legislativa en el último párrafo de la Exposición de Motivos:
Las enmiendas incorporadas a la Regla 23 tienen el propó-sito de atemperar dicha disposición legal con la reciente deter-minación del Tribunal Supremo Federal al establecerse que las vistas preliminares serán .de naturaleza pública y disponerse las circunstancias excepcionales cuando podrán ser privadas. (Enfasis suplido.). Leyes de Puerto Rico, supra, pág. 978.
Precisamente, como se discutirá más adelante, la deci-sión a la que alude la Exposición de Motivos, así como otras determinaciones anteriores del Tribunal Supremo federal, establecen el requisito de una determinación judicial previa a la exclusión del público de la sala de vista preli-minar, compatible con evaluar si existe un interés apre-miante que sólo puede ser protegido con la vista en privado.
No obstante lo anterior, debemos reconocer que cierto aspecto de la Exposición de Motivos refleja que la Asam- *981 blea Legislativa consideró que la seguridad de los agentes encubiertos que se encuentren en funciones al momento de testificar en la vistá preliminar constituye un interés apre-miante que justifica —sin ulterior consideración— el cierre de la vista preliminar. En este sentido, se expresó que:
Es necesario también proteger la integridad física y emocio-nal de los agentes encubiertos y confidentes quienes al mo-mento de prestar testimonio en vista preliminar todavía se desempeñan en esas funciones. A estos efectos expresamente se exceptúan de la naturaleza pública de la vista los casos de agentes encubiertos y confidentes quienes al momento de decla-rar en la vista preliminar se estén desempeñando en esas funciones. (Enfasis suplido.) Leyes de Puerto Rico, supra, pág. 978.
No cuestionamos que lo anterior pueda ser un interés apremiante del Estado. La limitación del acceso a la vista preliminar podría ser necesaria para proteger la vida misma de estos ciudadanos, a quienes hemos reconocido como un arma de investigación necesaria para esclarecer la comisión de ciertos delitos que se distinguen por su característica esencial de la clandestinidad. Si no se contara con este método de investigación, muchos de estos delitos permanecerían impunes. Pueblo v. Carballosa y Balzac, 130 D.P.R. 842, 851 (1992); Pueblo v. Seda, 82 D.P.R. 719, 730 (1961). Véase Valle v. E.L.A., 157 D.P.R. 1, 21 (2002).
Ahora bien, no podemos desvincúlar las enmiendas realizadas a la Regla 23(c) de Procedimiento Criminal, supra, del problema que el legislador pretendió remediar: la inconstitucionalidad de una regla de exclusión automática del público de la sala de vista preliminar. Por lo tanto, aunque reconocemos la distinción hecha por el legislador en cuanto a los agentes encubiertos que aún se encuentran en funciones, debemos tener presente el propósito que en principio guió a la Asamblea Legislativa al aprobar dicha ley, para así imprimirle efectividad a su espíritu. Véanse: Otero de Ramos v. Srio. de Hacienda, 156 D.P.R. 876, 883 *982 (2002); Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 538 (1999); 31 L.P.R.A. sec. 19. En este sentido, aunque como regla general los términos obligatorios como “deberá” se interpretan de forma tal que ordenan algo y los términos potestativos como “podrá” de forma tal que concedan dis-creción, hemos dispuesto que los primeros pueden leerse como los segundos, haciendo directivo lo que es aparente-mente mandatorio, para conformar el lenguaje del estatuto con el propósito legislativo. Consejo Arqueológico v. Mun. de Barceloneta, 168 D.P.R. 215 (2006); Srio. de Justicia v. Tribunal Superior, 95 D.P.R. 158 (1967).
Por otro lado, refrendar la tesis del Ministerio Público y decretar automáticamente la celebración de la vista preli-minar en privado cuando se fuese a presentar el testimonio de un agente encubierto, que aún se encuentre en funcio-nes, pondría la citada Regla 23(c) al margen de los precep-tos constitucionales aplicables. De esta forma, nuestra ta-rea en el caso de autos consiste en armonizar la regla en controversia con la normativa constitucional pertinente. Véanse: Nogueras v. Hernández Colón, 127 D.P.R. 405 (1990); Milán Rodríguez v. Muñoz, 110 D.P.R. 610 (1981). Veamos.
III
El derecho a un juicio público a favor de la ciudadanía y la prensa no es absoluto, pues puede encontrar su límite en intereses gubernamentales apremiantes que justifiquen la celebración de la vista o parte de ésta en privado.(3) No obstante, por tratarse de un derecho funda *983 mental, la consideración de un posible cierre de la vista preliminar debe ser evaluada restrictivamente a favor del acceso, mediante un escrutinio estricto. Para que la limita-ción sea posible, se requiere demostrar que ésta es necesa-ria para salvaguardar un interés gubernamental apre-miante y que la exclusión haya sido estrechamente diseñada (narrowly tailored) para servir a dicho interés. Véase, a modo ilustrativo, Globe Newspaper Co. v. Superior Court, supra. En este sentido, existe una presunción de apertura de los juicios penales, la cual —según hemos vis-to— se extiende a la etapa de la vista preliminar. De ahí que quien pretenda derrotar dicha presunción deberá sa-tisfacer el escrutinio siguiente establecido por el Tribunal Supremo federal y que hoy adoptamos:
La presunción de apertura puede superarse sólo por un in-terés apremiante basado en una determinación de que el cie-rre es esencial para preservar valores superiores y que está estrechamente diseñado para servir dicho interés. El interés debe ser articulado por el tribunal, junto con determinaciones suficientemente específicas, de manera que un tribunal apela-tivo pueda juzgar si la orden de cierre fue adecuada. (Traduc-ción nuestra). Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 510 (1984) (Press-Enterprise I).(4)
Asimismo, dicho criterio ha sido extendido por el Tribunal Supremo federal a aquellos casos en los que —au- *984 sente un reclamo del derecho de acceso por parte del público o la prensa— es el acusado quien se opone al cierre del pro-cedimiento, al amparo de su derecho explícito a un juicio público. Así lo resolvió dicho foro en Waller v. Georgia, supra, en el contexto de un procedimiento anterior al juicio, tras concluir que el derecho a un juicio público de la Sexta Enmienda, se extiende a las vistas de supresión de evidencia. (5) Para llegar a dicha conclusión, el Tribunal Supremo de Estados Unidos consideró sus decisiones previas sobre la apertura de los procedimientos penales a la luz del derecho de acceso de la Primera Enmienda, y sostuvo lo si-guiente:
[E]l análisis en estos casos se ha basado en gran medida en la Primera Enmienda. Sin embargo, no cabe duda que el dere-cho explícito del acusado bajo la Sexta Enmienda no es menos protector del juicio publico que el derecho implícito de acceso del público y la prensa bajo la Primera Enmienda. El propó-sito principal de un procedimiento penal debe ser juzgar al acusado' justamente y nuestra jurisprudencia ha sido uni-forme al reconocer que la garantía de juicio público es una creada para el beneficio del acusado. (Traducción y énfasis nuestros, y citas omitidas.) Waller v. Georgia, supra, pág. 46.
Así, en vista del propósito que persigue la garantía del derecho a un juicio público, en aquellos procedimientos de nuestro ordenamiento procesal penal en los que se haya reconocido la existencia de un derecho de acceso a favor de la ciudadanía y de la prensa —como es el caso de la vista preliminar— también habrá cabida para que el acusado invoque su propio derecho a un juicio público según la See. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, supra, y la Sexta Enmienda de la Consti- *985 tución de Estados Unidos. Claro está, en ese análisis cobra particular importancia la semejanza del procedimiento en cuestión con el juicio. A tales efectos, citando a Waller v. Georgia, supra, el profesor Chiesa señala que el derecho explícito a juicio público
... se extiende no sólo al acto del juicio propiamente dicho sino también a otros procedimientos criminales que participan de una naturaleza similar al juicio. Queda incluido el derecho a vista pública de supresión de evidencia, así como, al menos, vista pública en todo procedimiento al cual haya ún derecho de acceso por parte del público en general. (Enfasis nuestro y ci-tas omitidas.) Chiesa Aponte, op. cit., pág. 202.
Del mismo modo, el profesor La Fave, a la luz de Waller v. Georgia, supra, comenta: “También se ha resuelto que [la garantía de la Sexta Enmienda] se extiende a ciertos pro-cedimientos anteriores al juicio, como las vistas de supre-sión de evidencia, que se asemejan al juicio.” (Enfasis suplido.) 6 LaFave, Israel and King, Criminal Procedure 3rd Sec. 24.1, págs. 301-302 (2007).
En Waller v. Georgia, supra, al evaluar la controversia ante su consideración, el Tribunal Supremo de Estados Unidos examinó la naturaleza del procedimiento cuya apertura se reclamaba. El Tribunal le confirió importancia al hecho de que frecuentemente las vistas de supresión de evidencia se parecen a un juicio, pues los testigos declaran bajo juramento, los abogados exponen sus argumentos y el resultado frecuentemente depende de una evaluación de cuestiones de hecho. Waller v. Georgia, supra, pág. 47. Incluso, se reconoció que én ocasiones la vista de supresión podría ser el único juicio que se celebre, pues luego de ésta el acusado podríá hacer una alegación preacordada con Fiscalía y declararse culpable. Id.
Precisamente, este criterio de similitud al juicio fue el que posteriormente llevó al Tribunal Supremo de Estados Unidos a concluir en Press-Enterprise II que existe un derecho de acceso del público a las vistas preliminares *986 que son suficientemente parecidas al juicio (sufficiently like a trial). Press-Enterprise II, pág. 12. Este pronuncia-miento, según indicamos, se hizo extensivo a las vistas pre-liminares de nuestra jurisdicción en El Vocero de Puerto Rico v. Puerto Rico, supra. Allí, el Tribunal Supremo federal consideró que la vista preliminar en Puerto Rico es lo suficientemente parecida a un juicio, como para que se deba permitir el acceso del público y de la prensa a ésta. El Vocero de Puerto Rico v. Puerto Rico, supra, págs. 149-150.(6)
Cónsono con lo anterior, concluimos que el imputado puede invocar su derecho a un juicio público mediante la Sec. 11 de la Carta de Derechos de la Constitución de Puerto Rico, supra, o según la Sexta Enmienda de la Constitución de Estados Unidos, para oponerse a un intento de cierre de la vista preliminar por parte del Ministerio Público. Por ende, ante el reclamo del imputado de su derecho a un juicio público, toda solicitud de cierre de la vista preliminar deberá evaluarse restrictivamente a favor de su apertura, según un escrutinio estricto. De esta manera, adoptamos los requisitos siguientes esbozados por el Tribunal Supremo federal en Waller v. Georgia, supra, pág. 48: (1) la parte que interese el cierre de la vista deberá exponer un interés apremiante; (2) el cierre no será más amplio que lo necesario para proteger dicho interés; (3) el tribunal deberá considerar alternativas razonables al cierre, y (4) el *987 tribunal deberá realizar determinaciones adecuadas para sostener el cierre.
Ciertamente, en conformidad con los requisitos que aquí adoptamos, no cabe duda de que la posibilidad de un decreto automático que ordene el cierre de la vista preliminar según la Regla 23(c) de Procedimiento Criminal, supra, no encuentra apoyo en nuestro ordenamiento constitucional. Es profusa la jurisprudencia norteamericana que valida la limitación del acceso del público durante el juicio cuando el Ministerio Público se propone presentar el testimonio de un agente encubierto, para preservar la seguridad o identidad de dicho agente. Véase, a modo ilustrativo, Anotación, Exclusion of Public from State Criminal Trial to Preserve Safety or Confidentiality of Undercover Police Officer Witness, 100 A.L.R.5th 171 (2002). No obstante, existe un consenso en ella sobre el hecho de que, a la luz de Waller v. Georgia, supra, la limitación del acceso del público no puede ser automática. Id.
Así, pues, resulta forzoso concluir que en los casos en que el imputado invoque su derecho a un juicio público, para oponerse a una solicitud del Estado hecha al amparo de la referida Regla 23(c) de Procedimiento Criminal, para presentar en privado el testimonio de un agente encubierto que aún se encuentra en funciones, se requerirá una consideración previa del tribunal para dilucidar la necesidad de tal solicitud. Esa consideración consistirá en una vista de necesidad, en la cual el Ministerio Público deberá demostrar que el agente encubierto aún se encuentra en funciones y que la limitación al acceso del público a la vista preliminar es la alternativa menos abarcadora para proteger su seguridad. De tratarse de un agente encubierto que no se encuentra en funciones, el Ministerio Público deberá demostrar que existe un interés apremiante que justificaría su solicitud, como lo podría ser preservar la seguridad física o emocional del agente y que la limitación del acceso del público no será más amplia de lo necesario para proteger ese interés.
*988 En la vista de necesidad que celebre el tribunal de ins-tancia podrán tomarse en cuenta factores como los siguien-tes: (1) si el agente encubierto continúa trabajando en investigaciones de esa naturaleza; (2) si continúa traba-jando en los casos o las investigaciones relacionadas al caso objeto de la vista de necesidad; (3) si su identidad ha sido revelada; (4) las medidas o precauciones que ha to-mado el Estado para preservar la identidad y seguridad del agente; (5) si el agente ha recibido amenazas, y (6) si el agente teme por su vida o su seguridad física o emocional o la de su familia. Para demostrar lo anterior, el testimonio del agente en cuestión durante la vista de necesidad no será necesario, aunque nada impide que ese agente compa-rezca a declarar en la referida vista. Véase, a modo ilustra-tivo, Anotación, supra, y casos allí citados.
Resolvemos, además, que la solicitud del Ministerio Pú-blico deberá estar fundamentada y, salvo justa causa, de-berá formularse y notificársele al imputado dentro de un término de tiempo razonable antes de la celebración de la vista preliminar, de modo tal que la solicitud no dilate los procedimientos ante el tribunal.
Considerada la solicitud del Ministerio Público, el tribunal deberá fundamentar su decisión con determinaciones precisas y detalladas. De decretar que procede la limita-ción al acceso del público, el tribunal deberá exponer las razones que justifiquen que el cierre no será más amplio de lo necesario para proteger el interés del Ministerio Público, como lo sería el cierre parcial de la vista, sólo durante el testimonio del agente en cuestión. (7)
Aclarado lo anterior, pasamos a disponer concretamente del caso ante nuestra consideración.
*989 IV
En el caso de autos, el Ministerio Público se proponía presentar el testimonio de un agente encubierto en dos vistas preliminares. A tales efectos, solicitó al Tribunal de Pri-mera Instancia que celebrara una vista de necesidad en ambos casos para que el foro primario determinara si pro-cedía su solicitud. En el caso de los grupos I y II, según explicamos, el tribunal de instancia se negó a conceder la solicitud del Ministerio Público por entender que era tardía. En consecuencia, al amparo del fundamento de au-sencia total de prueba, resolvió que no existía caúsa probable para acusar a los imputados de dichos grupos.(8)
Creemos que, al así actuar, el Tribunal de Primera Ins-tancia excedió los límites de su discreción. Por un lado, la causa de la alegada ausencia total de prueba fue provocada por el propio tribunal, que insistió en que el Ministerio Público presentara sus testigos, a pesar de que éste solicitó presentar la prueba en privado. A su vez, dicho foro con-cluyó que la solicitud en cuestión era tardía, aun cuando el Ministerio Público mostró justa causa para haberla pre-sentado el mismo día de la vista; a saber: que en ese mo-mento supo del hecho de que el agente encubierto aún te-nía investigaciones pendientes y que temía por su seguridad. Ante tales circunstancias, el foro de instancia debió, al menos, evaluar la petición del Ministerio Público para determinar su procedencia, mediante la celebración de la vista de necesidad solicitada.
Por otro lado, en el caso del grupo III, el tribunal de instancia sí celebró una vista de necesidad para dilucidar la solicitud del Ministerio Público, pero determinó que ésta era improcedente a la luz del testimonio ofrecido por el *990 agente Disdier González y por considerar que, de todas maneras, la identidad y descripción física del agente encu-bierto en controversia habían sido reveladas, puesto que su nombre aparecía en las denuncias.
Aunque reconocemos que el tribunal de instancia actuó correctamente al celebrar la vista, ese foro primario no fundamentó, de forma precisa y detallada, las razones para denegar la solicitud del Ministerio Público, lo que nos im-pide pasar juicio sobre la corrección de su determinación. Por lo tanto, procede que el tribunal dilucide nuevamente la solicitud del Ministerio Público, lo que deberá hacer me-diante la celebración de una nueva vista de necesidad.
Por otro lado, respecto a la inferencia hecha por el tribunal de instancia sobre el hecho de que tanto la identidad como la descripción física del agente encubierto en cuestión fueron reveladas, creemos que, en las circunstancias de este caso, ésta no procedía.
Un examen de los autos originales del caso de epígrafe revela que a través del procedimiento judicial se han con-signado varios nombres con apellidos distintos para el mismo agente encubierto. Mientras que en las denuncias consta un nombre, en las resoluciones de no causa en vista preliminar emitidas por el Tribunal de Primera Instancia en los casos de los grupos I y II consta otro. Lo mismo ocurre con una resolución posterior que emitió el tribunal de instancia en la que reafirmó su determinación de no causa en dichos casos. Aunque le corresponde al foro de instancia evaluar este asunto en la vista de necesidad, en el caso de autos no procedía su inferencia sólo a base de la información incluida en la denuncia.
Asimismo, creemos que la presencia de dos nombres con apellidos distintos para un mismo agente encubierto es in-dicativo del esfuerzo realizado por el Ministerio Público para proteger la identidad de su testigo. En este sentido, debe tomarse en cuenta que no es práctica ajena a los agentes encubiertos el asumir distintos nombres para pre-servar adecuadamente su identidad y proteger la efectivi- *991 dad de sus investigaciones. Por ello, ni el Tribunal de Pri-mera Instancia ni el Tribunal de Apelaciones tenían motivos suficientes para inferir —del hecho de que se con-signó un nombre en las denuncias— que la identidad del agente encubierto en controversia fue revelada y, mucho menos, su descripción física.
V
Por los fundamentos que anteceden, revocamos el dicta-men del Tribunal de Apelaciones. Devolvemos el caso al Tribunal de Primera Instancia para que celebre las vistas de necesidad correspondientes, de forma compatible con los pronunciamientos esbozados en esta opinión.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rebollo López concurrió con el resultado sin opinión escrita.

 Los imputados recurridos aquí son: Gabriel Pepín Cortés, Josian Navarro Fernández, Joel Baerga Ortiz, Reynaldo N. Díaz Hernández, Jaime J. Vega Medina, Félix García Tbledo, Juan C. Sánchez Rodríguez y Ornar Pérez Fonfrías.

 Sobre el alcance del derecho de acceso a otros procedimientos anteriores al juicio, véanse, a modo ilustrativo: Waller v. Georgia, 467 U.S. 39 (1984) (vistas de supresión de evidencia); Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501 (1984) (Press-Enterprise I) (voir dire o selección del Jurado).

 Tal es el caso de la Regla 131 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que dispone que, en casos de delitos sexuales, el tribunal podrá excluir al público del juicio durante el testimonio de la víctima, previa la celebración de una vista en privado para dilucidar la necesidad de proveerle a la víctima esta protección. Simi-larmente, la Regla 21 de Evidencia, 32 L.P.R.A. Ap. IV, que regula el procedimiento para la admisibilidad de prueba sobre la conducta o el historial sexual de la víctima del delito de violación o su tentativa, dispone la celebración de una vista privada en la cual se permitirá el interrogatorio a la perjudicada sobre la evidencia propuesta *983 por el acusado. Véase, además, la Regla 154.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

 Similares requisitos adoptamos en Fulana de Tal v. Demandado A, 138 D.P.R. 610 (1995), para justificar una limitación del derecho del acceso del público y la prensa a los procedimientos civiles.
Cabe señalar que los requisitos esbozados en Press-Enterprise I fueron reafir-mados en Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 13 (1986) (Press-Enterprise ID, donde se enfatizó la necesidad de que el tribunal realice determina-ciones específicas (specific, on the record findings) para justificar la limitación al derecho de acceso. A tales efectos, en ese caso se resolvió que si el interés apremiante que se invoca para justificar una solicitud de cierre de la vista preliminar es el derecho del acusado a un juicio justo, es necesario que el tribunal realice determina-ciones específicas que demuestren que: (1) existe una probabilidad sustancial de que el derecho del acusado a un juicio justo se perjudique por la publicidad que el cierre prevendría, y (2) que las alternativas razonables al cierre no pueden proteger ade-cuadamente el derecho del acusado a un juicio justo. Id., pág. 14.

 En Waller v. Georgia, supra, pág. 43, a pesar de la oportuna objeción de los acusados, el tribunal de-instancia accedió al cierre de la vista de supresión de evi-dencia solicitado por el fiscal, quien adujo que, según un estatuto del estado de Georgia, la publicación de la prueba en controversia la haría inadmisible en los procedimientos posteriores. Tras la confirmación de esta determinación por parte del Tribunal Supremo de Georgia, el Tribunal Supremo federal revocó, resolviendo, se-gún señalamos, que el derecho a un juicio público de la Sexta Enmienda alcanza las vistas de supresión de evidencia.

 Para llegar a tal conclusión, el Tribunal Supremo federal consideró varios factores, entre ellos: que la vista preliminar se celebra ante un magistrado neutral; el imputado tiene derecho a la asistencia de un abogado, a contrainterrogar los tes-tigos en su contra y a ofrecer prueba a su favor, y no está presente un jurado. Se señaló, además, que en una cantidad sustancial de los casos criminales, la vista preliminar provee la única oportunidad para que el público observe el sistema judicial penal. El Vocero de Puerto Rico v. Puerto Rico, supra, pág. 150.
Debemos recalcar que, ya que el único propósito al destacar estas característi-cas propias de la vista preliminar fue reconocer la existencia del derecho de acceso del público y de la prensa al procedimiento, Ello de ninguna forma implica que este Tribunal se distancie de la norma firmemente establecida a los efectos de que la vista preliminar no es un “mini juicio” ni un juicio preliminar. Pueblo v. Soler, 163 D.P.R. 180, 192 (2004); Pueblo v. Ortiz, Rodríguez, 149 D.P.R. 363, 375 (1999).

 La norma que adoptamos es igualmente aplicable a aquellos casos en los que el Ministerio Público interese presentar el testimonio de un confidente que aún se encuentre en funciones o el testimonio de la víctima de un caso de violación o actos impúdicos o lascivos, según ló dispone la Regla 23(c) de Procedimiento Criminal, supra.

 Incluso, como mencionamos, el tribunal de instancia impuso una sanción de quinientos dólares a cada fiscal. Aunque entendemos que dicha sanción es improce-dente, el Procurador General no la cuestiona en su petición de certiorari, por lo que no intervendremos con ésta.