ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| GAMALIEL COSS CARMONA  Peticionario  v.  SUPERINTENDENTE COMPLEJO CORRECCIONAL BAYAMÓN-708  Recurrido | KLCE202500096 | Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Fajardo  Caso Núm.: NSCI202400172  Sobre: Solicitud de Habeas Corpus |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

*Per Curiam*

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2025.

El señor Gamaliel Coss Carmona (en adelante, señor Coss Carmona o Peticionario) compareció ante nos, mediante un recurso discrecional de *certiorari*. Solicita nuestra intervención para revocar la *Resolución* emitida el 24 de enero de 2025, por el Tribunal de Primera Instancia, Sala de Fajardo (en adelante, TPI). En el referido dictamen, el TPI denegó la solicitud de *habeas corpus* instada al palio de la cláusula de detención preventiva de la Constitución de Puerto Rico. Fundamentó su determinación en que las dilaciones constantes para la celebración y continuación de la vista preliminar eran imputables al Peticionario y a su Defensa.

Por los fundamentos que expondremos, acordamos expedir el recurso de *certiorari* y revocar la *Resolución* recurrida.

**I.**

La causa del epígrafe se inició el 26 de diciembre de 2024, ocasión en que el señor Coss Carmona presentó una *Petición de*

Número Identificador

SEN2025_____

*Habeas Corpus* ante el TPI.[1] En esencia, expuso que habían transcurridos más de seis meses desde su detención preventiva, sin que se le haya celebrado juicio, por lo que solicitó su inmediata excarcelación.

Según se desprende del expediente que revisamos, el 13 de diciembre de 2023, se presentaron **ocho denuncias** en contra del Peticionario.[2]

Por el asesinato del señor Enrique De Jesús Arce (q.e.p.d.) el 19 de octubre de 2020, se imputaron **cinco cargos**:

> EL REFERIDO ACUSADO GAMALIEL COSS CARMONA, ALLÁ EN O PARA EL DÍA 19 DE OCTUBRE DE 2020 Y EN EL MUNICIPIO DE VIEQUES, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE FAJARDO
> .　　.　　.　　.　　.　　.　　.　　.
>
> **Artículo 93A del Código Penal de 2012, *Asesinato en Primer Grado*, 33 LPRA sec. 5142**
> [...] ILEGAL, VOLUNTARIA, CRIMINAL, INTENCIONAL, CON CONOCIMIENTO, A SABIENDAS Y PREMEDITADAMENTE: LE OCASIONÓ LA MUERTE AL SER HUMANO ENRIQUE DE JESÚS ARCE. CONSISTENTE EN QUE EL AQUÍ ACUSADO LE DISPARÓ CON UN ARMA DE FUEGO, PISTOLA SMITH & WESSON, CALIBRE 40, MODELO 4006, COLOR PLATEADA, CON LAS CACHAS NEGRAS, NÚMERO DE SERIE VCE5224, AL SER HUMANO ENRIQUE DE JESÚS ARCE, OCASIONÁNDOLE LA MUERTE EN EL ACTO.
>
> **Artículo 6.05 de la Ley de Armas de 2020, *Portación, Transportación o Uso de Armas de Fuego sin Licencia*, 25 LPRA sec. 466d**
> [...] ILEGAL, VOLUNTARIA, Y CRIMINALMENTE, TRANSPORTÓ Y PORTÓ, UN ARMA DE FUEGO, PISTOLA SMITH & WESSON, CALIBRE 40, MODELO 4006, COLOR PLATEADA, CON LAS CACHAS NEGRAS, NÚMERO DE SERIE VCE5224, SIN TENER UNA LICENCIA DE ARMAS VIGENTE BAJO LA LEY DE ARMAS, CON LA CUAL LE DISPARÓ AL SER HUMANO ENRIQUE DE JESÚS ARCE, OCASIONÁNDOLE LA MUERTE A ESE SER HUMANO EN EL ACTO.
>
> **Artículo 6.14A de la Ley de Armas de 2020, *Disparar o Apuntar Armas de Fuego*, 25 LPRA sec. 466m**
> [...] ILEGAL, VOLUNTARIA, Y CRIMINALMENTE, A SABIENDAS Y CON CONOCIMIENTO, DISPARÓ UN ARMA DE FUEGO, PISTOLA SMITH & WESSON, CALIBRE 40, MODELO 4006, COLOR PLATEADA, CON

---

[1] Apéndice, págs. 23-26.
[2] Apéndice, págs. 1-16.

LAS CACHAS NEGRAS, NÚMERO DE SERIE VCE5224, AL SER HUMANO ENRIQUE DE JESÚS ARCE, CAUSÁNDOLE LA MUERTE.

**Artículo 6.14B de la Ley de Armas de 2020,** *Disparar o Apuntar Armas de Fuego***, 25 LPRA sec. 466m**
[...] ILEGAL, VOLUNTARIA, INTENCIONAL, Y CRIMINALMENTE, CON CONOCIMIENTO Y A SABIENDAS, APUNTÓ UN ARMA DE FUEGO, PISTOLA SMITH & WESSON CALIBRE 40, MODELO 4006, COLOR PLATEADA CON CACHAS NEGRAS, NÚMERO DE SERIE VCE5224, HACIA ENRIQUE DE JESÚS ARCE.

**Artículo 285 del Código Penal de 2012,** *Destrucción de Pruebas***, 33 LPRA sec. 5378**
[...] ILEGAL, VOLUNTARIA, Y CRIMINALMENTE, A SABIENDAS Y CON CONOCIMIENTO, LIMPIÓ LA GUAGUA DE SU COMPAÑERA, UNA SUZUKI VITARA, PARA QUE NO HUBIESE RESIDUOS DE PÓLVORA EN ÉSTA. EL AQUÍ ACUSADO TAMBIÉN LIMPIÓ EL ARMA DE FUEGO, PISTOLA SMITH & WESSON, CALIBRE 40, MODELO 4006, COLOR PLATEADA, CON LAS CACHAS NEGRAS, NÚMERO DE SERIE VCE5224, CON LA QUE DIO MUERTE AL SER HUMANO ENRIQUE DE JESÚS ARCE, Y LA ESCONDIÓ CON EL FIN DE DESTRUIR PRUEBA QUE SE PUDIESE USAR EN SU CONTRA EN UN PROCEDIMIENTO CRIMINAL.

Por el feminicidio de la expareja del Peticionario, la señora Yarelis González Lanzó (q.e.p.d.), ocurrido el 28 de noviembre de 2021, se imputaron **tres cargos**:

EL REFERIDO ACUSADO, GAMALIEL COSS CARMONA, ALLÁ EN O PARA EL DÍA 28 DE NOVIEMBRE DE 2021, EN VIEQUES, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE FAJARDO
. . . . . . . .

**Artículo 93E del Código Penal de 2012,** *Asesinato en Primer Grado***, 33 LPRA sec. 5142**
[...] A PROPÓSITO, CON CONOCIMIENTO Y A SABIENDAS: DIO MUERTE A YARELIS GONZÁLEZ LANZÓ, [EN SU MODALIDAD DE FEMINICIDIO] MUJER, CON QUIEN SOSTENÍA UNA RELACIÓN CONSENSUAL. CONSISTENTE EN QUE EL AQUÍ ACUSADO HACIENDO USO DE UN ARMA BLANCA, CUCHILLO, APUÑALÓ EN DIFERENTES PARTES DEL CUERPO A ESE SER HUMANO, OCASIONÁNDOLE LA MUERTE.

**Artículo 6.06 de la Ley de Armas de 2020,** *Portación y Uso de Armas Blancas***, 25 LPRA sec. 466e**
[...] ILEGAL, VOLUNTARIA, MALICIOSA, CON CONOCIMIENTO, A PROPÓSITO, A SABIENDAS, Y CON INTENCIÓN CRIMINAL, Y SIN MOTIVO JUSTIFICADO UTILIZÓ UN ARMA BLANCA, CUCHILLO, EN LA

COMISIÓN DEL DELITO DE ASESINATO EN [PRIMER] GRADO (ART. 93.E) FEMINICIDIO, OCASIONÁNDOLE LA MUERTE CON EL CUCHILLO A YARELIS GONZÁLEZ LANZÓ, QUIEN ERA SU PAREJA CONSENSUAL AL MOMENTO DE LOS HECHOS.

**Artículo 285 del Código Penal de 2012,** *Destrucción de Pruebas,* **33 LPRA sec. 5378**
[...] ILEGAL, VOLUNTARIA, Y CRIMINALMENTE, QUEMÓ UN MATRESS, EN DONDE DORMÍA CON YARELIS GONZÁLEZ LANZÓ, Y DONDE LA APUÑALÓ HASTA ÉSTA DESANGRARSE, A SABIENDAS DE QUE EL MISMO PODÍA SER UTILIZADO PARA EXÁMENES PERICIALES Y COMO EVIDENCIA, PARA LA RADICACIÓN DE CARGOS EN SU CONTRA, POR HABERLE OCASIONADO LA MUERTE A YARELIS GONZÁLEZ LANZO AL APUÑALARLA.

El TPI encontró causa para arresto por todos los delitos graves imputados e impuso una fianza global de $1.2 millones. No obstante, el Peticionario no la prestó ya que, al momento de la presentación de las referidas denuncias, se encontraba extinguiendo una condena de tres años por la tentativa de una infracción al Artículo 6.22 de la Ley de Armas de 2020, *Fabricación, Distribución, Posesión y Uso de Municiones; Importación de Municiones,* 25 LPRA sec. 466u. Es decir, por su condición de reclusión, no tenía derecho a salir bajo fianza.

El **27 de diciembre de 2023** inició la vista preliminar. El 26 de abril de 2024, aun cuando el Peticionario era procesable, el Lcdo. Guillermo Batlle Olivo expresó que no estaba preparado y renunció expresamente a los términos de juicio rápido de su cliente. Solicitó también que se uniera otro abogado de oficio a la Defensa del Peticionario. Es decir, dos abogados de oficio, uno por cada asesinato y los delitos relacionados a éstos. Así, el Lcdo. Sebastián O'Neill Rosado se unió a la representación legal del señor Coss Carmona.[3]

El 7 de junio de 2024, ocasión en que estaba pautada la vista preliminar, el señor Coss Carmona no estuvo en condiciones de

---

[3] Véase, Apéndice, págs. 30-31.

presentarse en sala, "puesto que tuvo una situación provocada por sí mismo con sus propias heces fecales mientras estaba en el área de las celdas del Tribunal".[4] Luego, el día 14 del mismo mes y año, el Departamento de Corrección y Rehabilitación (en adelante, DCR) no llevó al Peticionario al TPI.[5]

Entonces, el señor Coss Carmona extinguió su pena carcelaria el **24 de junio de 2024**, al aplicársele varias bonificaciones.[6] En ese momento, el Peticionario no satisfizo la fianza impuesta, por lo que comenzó a cursar el término semestral dispuesto en la cláusula constitucional de detención preventiva. A pesar de que el Ministerio Público, conformado por los Fiscales Karem Calo Pérez y Pedro Vargas Echevarría, siempre se encontró presto para presentar el caso, el procedimiento estatutario se vio en extremo dilatado.

A continuación, reproducimos el tracto que surge del dictamen impugnado, a partir de 24 de junio de 2024, fecha en que se dio por cumplida la reclusión del Peticionario, según la *Certificación* emitida por la señora Aida L. Cruz Rosado del DCR.[7]

.     .     .     .     .     .     .     .

De otra parte, **el 3 de julio [de 2024] comenzó el desfile de prueba**, continuando la vista el 12 de julio de 2024. Se dejó sin efecto el señalamiento del 2 de agosto, pero quedó pautada la continuación de la vista para el 9 de agosto. A su vez, el desfile de prueba continuó el 9 y el 23 de agosto de 2024.

Ahora bien, a la vista pautada para el 30 de septiembre, **el Lcdo. [Guillermo] Batlle [Olivo] no compareció a la vista debido a que se le olvidó el señalamiento porque no lo anotó en su agenda**. Debido a ello, la fiscalía no pudo continuar con su desfile de prueba.

La vista preliminar continuó el 4, 10 y 17 de octubre de 2024. No obstante, la vista del 31 de octubre [de 2024] no pudo celebrarse, aun cuando el testigo del Ministerio Público estaba presente en sala, **por razón de una situación personal del Lcdo. [Sebastián] O'Neill Rosado con el cuido de uno de sus hijos**.

---

[4] Apéndice, pág. 31.
[5] Apéndice, pág. 31.
[6] Apéndice, pág. 27.
[7] Apéndice, pág. 28.

> A pesar de los días feriados del mes de noviembre de 2024 y de los días laborables que **el Tribunal tuvo que recesar labores de sala para atender en persona asuntos electorales** como Presidente de la Comisión Local de Vieques, según requerido por el Código Electoral, se ofrecieron fechas durante ese mes para continuar con la vista preliminar. Sin embargo, **por razones de un viaje programado por el Lcdo. Batlle no se pudo calendarizar una vista**. La vista quedó pautada para el 19 de diciembre.[8] (Énfasis nuestro).

·    ·    ·    ·    ·    ·    ·    ·

Finalmente, la vista preliminar culminó el **26 de diciembre de 2024**, con una determinación de causa para acusar por todos los delitos graves imputados.[9] En idéntica fecha, el señor Coss Carmona, a través de su representación legal, instó la petición de *habeas corpus* que nos ocupa. Luego de celebradas varias vistas para su examen, el 24 de enero de 2025, el TPI denegó el auto extraordinario, mediante la *Resolución* recurrida.[10] Enunció:

> Resulta evidente que situaciones atribuibles al Sr. Coss Carmona y su defensa restó un aproximado de 6 meses al Ministerio Público de presentar su prueba. Evaluar esta petición en abstracción de los hechos procesales acontecidos y las dilaciones imputables al Sr. Coss Carmona constituirían un grave fracaso de la justicia.[11]

Además, el TPI citó a las partes para la celebración del juicio.[12] Inconforme, el 3 de febrero de 2025, el señor Coss Carmona acudió ante esta curia y señaló la comisión del siguiente error:

> **Cometió error el Tribunal de Primera Instancia al denegar la petición de *habeas corpus* al resolver que el juicio no dio inicio en el término de seis meses debido a demoras imputables al peticionario y no tomó en consideración que no fue hasta el 24 de junio de 2024 que se activó el derecho a estar en libertad bajo fianza cuando extinguió la sentencia por infracción al [A]rtículo 6.22 de la Ley 68 ni que tampoco mediaron actuaciones ilegales o**

---

[8] Apéndice, pág. 31.
[9] Apéndice, págs. 17-22. Las ocho acusaciones son: NSCR202400580 (Art. 93A Código Penal); NSCR202400581 (Art. 6.05 Ley de Armas); NSCR202400582 (Art. 6.14 Ley de Armas); NSCR202400583 (Art. 6.14 Ley de Armas); NSCR202400584 (Art. 285 Código Penal); NSCR202400585 (Art. 93E Código Penal); NSCR202400586 (Art. 6.06 Ley de Armas); NSCR202400587 (Art. 285 Código Penal).
[10] Apéndice, págs. 29-34.
[11] Apéndice, pág. 34.
[12] Surge de la página web del Poder Judicial que la lectura de acusación se celebró el 14 de enero de 2025; y el juicio en su fondo comenzó el 6 de febrero de 2025.

**fraudulentas de éste para impedir la celebración del juicio en dicho plazo.**

El Peticionario acompañó su recurso con una *Solicitud de Auxilio de Jurisdicción para la Paralización de los Procedimientos*. En ésta, solicitó que paralizáramos el juicio pautado. Planteó que el TPI negó la excarcelación a pesar de haberse cumplido el término de la detención preventiva, debido a demoras imputables al Peticionario, pero sin determinar "qué actuaciones ilegales o fraudulentas del peticionario impidieron la celebración del juicio en dicho plazo".

Mediante una *Resolución* emitida el 3 de febrero de 2025, declaramos No Ha Lugar la solicitud de paralización. Por igual, le concedimos un breve término al Recurrido para que expusiera su postura. A tales efectos, la Oficina del Procurador General de Puerto Rico presentó *Solicitud de Desestimación y Escrito en Cumplimiento de Resolución*. Además de concurrir con la determinación judicial impugnada, el Procurador General solicitó la desestimación del recurso por éste adolecer de un Apéndice incompleto. En particular, aludió reiteradamente a la falta de la regrabación de los procedimientos.

En atención a los argumentos presentados por las partes, instamos al TPI a remitir el enlace de la regrabación de las vistas celebradas en el caso del título. A saber: 27 de diciembre de 2024, así como el 2, 14, 16 y 24 de enero de 2025. Resumimos a continuación lo acontecido en las aludidas audiencias.

### *27 de diciembre de 2024 (0:34:04)*

El Ministerio Público, sin solicitar la desestimación de la causa ni someterse a la jurisdicción del tribunal, planteó la falta de jurisdicción. Indicó que el Peticionario no emplazó al Superintendente del Complejo Correccional Bayamón-708, según establece el Título XII del Código de Enjuiciamiento Criminal, 34 LPRA secs. 1741-1770. Luego de expresar que el defecto era

subsanable, el Ministerio Público solicitó la posposición del proceso. La Defensa del peticionario replicó, pero el TPI acogió los planteamientos jurisdiccionales y ordenó a la Secretaría a expedir el emplazamiento.

**2 de enero de 2025 (2:03:15)**

### Aida Cruz Rosado

El TPI juramentó a los testigos. Luego de un *voir dire*, se admitió como *exhibit* del Peticionario su expediente del DCR.[13] En torno a éste, testificó la señora Aida Cruz Rosado, Supervisora de Récord de Bayamón 705, quien suscribió la *Certificación* de la extinción de la condena del Peticionario el 26 de junio de 2024.

Por su parte, el Ministerio Público, abordó otros documentos incluidos en el expediente, los cuales constataron que el señor Coss Carmona incurrió en tres desacatos y otros incumplimientos con las normas penitenciarias por los que fue sancionado. Además, durante su condena, el Comité de Clasificación y Tratamiento recomendó la reclusión en una cárcel de máxima seguridad. Aun cuando la Defensa del Peticionario cuestionó la pertinencia de la línea de preguntas, el Ministerio Público apuntó que eran relevantes para que el TPI, de conceder el *habeas corpus*, estableciera las máximas condiciones cautelares.

**14 de enero de 2025 (1:59:53)**

### Jorge Carmona Sanes

En la audiencia, luego de la argumentación de las partes sobre la disposición constitucional de detención preventiva y la imposición de condiciones cautelares, prestó testimonio el señor Jorge Carmona Sanes, de 59 años. El declarante es tío materno del Peticionario y residente de Fajardo. A preguntas de la Defensa del señor Coss Carmona, el testigo dijo que sólo tenía conocimiento de uno de los

---

[13] Durante la audiencia no se fotocopió el expediente, sino que sería custodiado por funcionarios del DCR, quienes lo llevarían al TPI.

asesinatos imputados al Peticionario. Interrogado por el Ministerio Público, admitió que conoció a la víctima Yarelis González Lanzó, testificó que no sabía de su paradero ni que su asesinato se le atribuía al Peticionario.

El testigo mostró su disponibilidad para que el Peticionario residiera en su hogar, vigilarlo y acompañarlo al TPI, siguiendo "al pie de la letra" las instrucciones del TPI, en cuanto a cualquier condición impuesta, incluyendo llamar a la Policía de ser necesario. El señor Carmona Sanes testificó que está bien de salud, salvo por una hernia, que hace "chiripas" de vez en cuando y que su único ingreso son los "cupones". Aunque reconoció que necesita trabajar incidentalmente para su sostén, el señor Carmona Sanes aseguró que estaría todo el tiempo con el Peticionario. Afirmó que no teme a su sobrino y que éste lo respeta. Surgió, además, que el declarante cuenta con un teléfono celular y no posee armas de fuego.

De otro lado, el declarante dijo conocer de la comisión de otro delito imputado al señor Coss Carmona en 2021. En esa ocasión, al Peticionario se le impuso una fianza, la cual prestó por conducto de una compañía privada. El señor Coss Carmona, sin la anuencia ni el conocimiento del testigo, utilizó la dirección de la residencia de su tío en el documento contractual de fianza. Empero, el Peticionario no vivió en ese periodo en la vivienda del declarante.[14] Surgió que, luego de ser liberado por otro *habeas corpus*, el Peticionario desacató al tribunal y fue arrestado. Así, pues, el Ministerio Público cuestionó la idoneidad del señor Carmona Sanes como tercer custodio.

**16 de enero de 2025 (3:22:19)**

### Jorge Carmona Sanes

En la vista, continuó el interrogatorio del señor Carmona Sanes por parte del Ministerio Público, a los fines de impugnar su

---

[14] Este dato fue corroborado por el testimonio del Agte. Raúl Velázquez Paz.

capacidad como custodio, así como la conveniencia de la ubicación de la residencia. A modo de ejemplo, se planteó que el declarante no cuenta con un aparato telefónico fijo, tampoco lo podría pagar; y el móvil lo sufraga mediante una subvención federal. Se cuestionó la suficiencia de recursos del testigo para asumir la responsabilidad que acarrearía custodiar al Peticionario, incluyendo la disponibilidad de transportación o apoyo de familiares, ya que el señor Carmona Sanes dijo que no contaba con ahorros.

La Defensa del Peticionario intentó rehabilitar al testigo. Éste dijo poseer un automóvil en buenas condiciones; y que la casa tenía dos habitaciones. Aseveró que la madre del Peticionario lo iba a ayudar con los gastos generales. A esos fines, sostuvo que entregó una serie de documentos a un representante del Programa de Servicios con Antelación al Juicio (en adelante, PSAJ) para que fuera considerado como el tercer custodio del señor Coss Carmona.

### Yolanda Carmona Sanes

La testigo, madre del Peticionario, reside en Vieques. Manifestó que ayudaría con dinero a su hermano para que pueda ser el custodio del señor Coss Carmona. Además, afirmó tener entera disponibilidad para dar apoyo en la encomienda. El Ministerio Público cuestionó a la declarante acerca de su disposición a denunciar al Peticionario de ser necesario. La testigo respondió en la afirmativa, si así tenía que hacerlo. Negó que le tuviera temor. Mencionó, además, que el Peticionario pescaba, sabía navegar y nadar.

### Agte. Raúl Velázquez Paz

El Ministerio Público trajo como testigo al agente Velázquez Paz, quien declaró acerca de una investigación que llevó a cabo y que implicaba al Peticionario. Indicó que, el 27 de octubre de 2020, se personó con otros agentes a la residencia de la señora Carmona Sanes para expedir una citación al Peticionario. Ésta señaló la casa

vecina donde se encontraba el señor Coss Carmona y advirtió a los agentes del orden público que tuvieran cuidado porque su hijo amenazó con matar a la Policía si se presentaba. En esa ocasión, el testigo vio a la víctima Yarelis González Lanzó y la citó para el día siguiente. La hoy occisa le corroboró que el Peticionario se encontraba detrás de una pared con un rifle, esperándolos para matarlos. En el contrainterrogatorio, el agente Velázquez Paz testimonió que, por la seguridad de todos los presentes, desistió de citar al señor Coss Carmona. Luego, en el redirecto, explicó que solicitó una orden de allanamiento.

En una oportunidad posterior, el 7 de junio de 2021, el testigo expidió una citación al Peticionario, quien se encontraba bajo fianza, pero éste no compareció ni se excusó. En ese momento, el Peticionario vivía con una tía, cerca de la residencia de la señora Carmona Sanes. A preguntas de la Defensa, el declarante enunció que no hubo amenazas ni incidentes de violencia al citarlo. En torno a esa ocasión, el Ministerio Público presentó unas fotografías como prueba ilustrativa. El testigo reconoció su presencia, la del Peticionario y la de la occisa Yarelis González Lanzó.

### *24 de enero de 2025 (3:38:41)*

### *Amarilis Márquez Márquez*

Luego de un turno posterior debido a que ni el Peticionario ni sus abogados se encontraban presentes, compareció la testigo quien funge como Secretaria Regional Auxiliar del TPI. Ésta declaró que era responsable de los expedientes judiciales. Cuenta con más de tres décadas de experiencia. La testigo explicó sobre las características, organización y composición de los expedientes civiles y criminales. En cuanto a los expedientes de los casos del Peticionario, los cuales se admitieron como *exhibits*, la declarante atestiguó acerca de la presentación de las denuncias; y el inicio de la vista preliminar el 27 de diciembre de 2023. En lo sucesivo, la

testigo declaró sobre algunas incidencias que, en suma, dilataron el procedimiento preliminar.

El TPI, por su parte, realizó unas expresiones en cuanto a la naturaleza de la Sala de vista preliminar y la anotación de las incidencias del proceso.

A preguntas del Ministerio Público, a través de una minuta fechada el 5 de agosto de 2022, del caso criminal grave NSCR202100098, se aludió a un desacato criminal en que fue encontrado incurso el Peticionario, luego de haber sido liberado por otro *habeas corpus*. Se ordenó su arresto en dicha ocasión.

En el turno de contrainterrogatorio, la Defensa se refirió a otros documentos del expediente. En particular, lo relacionado a un procedimiento de procesabilidad, ocurrido meses antes de la extinción de la condena del Peticionario en junio de 2024.

### *Xavier Nieves Olmo*

El funcionario del PSAJ, quien funge como evaluador de condiciones de riesgo, testimonió a través de videoconferencia. Como parte del proceso de evaluación del *habeas corpus* entrevistó al tío del Peticionario. Como resultado, el testigo realizó varias recomendaciones. A su vez, mencionó las condiciones que se imponen a los imputados por delitos similares a los del señor Coss Carmona. El testigo expresó su preocupación por el tercer custodio, ya que el señor Carmona Sanes trabaja y no puede supervisar al Peticionario en todo momento. El señor Nieves Olmo expresó que, por la naturaleza de los delitos imputados al Peticionario y sus previas incomparecencias, éste debe estar *lockdown* 24/7.

En el contrainterrogatorio, la Defensa trajo a colación que, posterior a la entrevista del señor Carmona Sanes, éste presentó varios documentos, como la factura de Luma. En cuanto a las calificaciones que debe tener el tercer custodio, el testigo mencionó que debe tener una buena reputación moral, no tener convicciones,

entre otras. Al respecto, indicó que el señor Carmona Sanes fue evaluado. El TPI aclaró que si el señor Carmona Sanes no quiere dejar de trabajar para custodiar al Peticionario en todo momento, entonces, no puede ser el tercer custodio. La Defensa, entonces, abogó por condiciones razonables. Incluso, cuestionó al testigo sobre si se podía incorporar un segundo custodio. El señor Nieves Olmo contestó que nadie más ha sido evaluado por PSAJ para ese propósito.

Sometida la prueba por ambas partes, los juristas presentaron sus respectivas argumentaciones finales y el TPI se reservó el fallo. Indicó que emitiría ese día un dictamen por escrito.

## II.

El Artículo II, Sección 11 de nuestra Constitución dispone que "[l]a detención preventiva antes del juicio no excederá de seis meses". Art. II, Sec.11, Const. ELA, LPRA, Tomo 1, ed. 2023, pág. 359. A esos efectos, el auto de *habeas corpus* es un recurso extraordinario de naturaleza civil, mediante el cual una persona que está privada ilegalmente de su libertad solicita de la autoridad judicial competente que investigue la causa de su detención. *Pueblo v. Díaz Alicea,* 204 DPR 472, 485 (2020), que cita a *Quiles v. Del Valle,* 167 DPR 458, 467 (2006).

A diferencia del derecho a un juicio rápido, este precepto no se ha implementado de forma estatutaria.[15] Esta protección,

---

[15] En el *Proyecto de Reglas de Procedimiento Criminal,* febrero 2020, del Secretariado de la Conferencia Judicial y Notarial, la Regla 1019, propone una regulación de la detención preventiva antes del juicio.

La detención preventiva de una persona imputada antes del comienzo del juicio no excederá de seis (6) meses.

(A) *Cómputo del plazo*

El plazo de seis (6) meses comenzará a transcurrir desde el día cuando la persona imputada es arrestada e ingresada en una institución correccional en espera del juicio por no prestar la fianza fijada. Este plazo expirará el último día de los seis (6) meses. Se excluirá del cómputo del plazo de detención preventiva:

(1) el tiempo que dure la internación de la persona imputada en una institución adecuada para el cuidado de la salud mental si tal internación impide la continuación del proceso;

(2) el tiempo atribuible a una demora causada intencionalmente con ese propósito por la persona imputada, siempre que ello se demuestre al tribunal mediante prueba clara, robusta y convincente.

corolario de la presunción de inocencia, evita que la persona que no puede prestar la fianza sea privada de libertad por un delito por el cual no ha sido juzgado. *Pueblo v. Paonesa Arroyo*, 173 DPR 203, 210 (2008). A tales efectos "[c]ualquier persona que sea encarcelada o ilegalmente privada de su libertad puede solicitar un auto de *habeas corpus* a fin de que se investigue la causa de dicha privación". Art. 469(a) del Cód. de Enj. Crim., 34 LPRA sec. 1741(a).

Como se conoce, el término de seis meses para la detención preventiva "es tan y tan perentorio que si llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que ponerlo en la calle por un *habeas corpus* inmediatamente que hayan pasado los seis meses". 3 *Diario de Sesiones de la Convención Constituyente*, pág. 1948.[16]

> Pero entiendo también que debe aparecer claramente que lo que se quiere poner aquí es que el acusado tiene derecho a que se le celebre el juicio no más tarde de 6 meses cuando está preso. O sea, que la detención preventiva para la celebración del juicio no debe ser mayor de seis meses. Claro que, si el acusado presta

---

(B) *Moción*
Cuando haya expirado el plazo de detención preventiva, la persona imputada podrá presentar una moción escrita basada en que ha estado encarcelada por un término mayor de seis (6) meses en una institución penal, por no haber prestado fianza, sin que haya comenzado el juicio.
(C) *Vista*
Será obligatorio celebrar una vista para adjudicar la moción, la cual se celebrará no más tarde del próximo día laborable a partir de su presentación.
(D) *Resolución*
El juez o la jueza que presida el proceso considerará y resolverá la moción. En su adjudicación, el tribunal indicará de qué manera cómputo el plazo de detención preventiva.
(E) *Apelación*
Contra la resolución que adjudique en los méritos la moción de excarcelación prevista en esta Regla podrá interponerse un recurso de apelación ante el Tribunal de Apelaciones.
(F) *Renuncia del derecho*
La persona imputada podrá renunciar personalmente y bajo juramento a su derecho de ser excarcelada, luego de expirado el término de detención preventiva. El tribunal, previo a aceptar la renuncia, tendrá la obligación de explicar a la persona imputada el alcance del derecho que pretende renunciar y lo que significa la renuncia de ese derecho. Deberá, además, apercibirle de las consecuencias de esta renuncia. La renuncia deberá ser por un término razonable, el cual no excederá de sesenta (60) días. Cualquier renuncia posterior a este último plazo seguirá el mismo trámite dispuesto anteriormente.
(G) *Facultad del tribunal para imponer condiciones*
Si el tribunal declara "con lugar" la moción de la persona imputada podrá imponer condiciones según lo dispuesto en estas Reglas. (Subrayado suplido).
[16] Refiérase a https://www.oslpr.org.

fianza, la situación es completamente distinta. *Id.*, pág. 1050.

Para efectos de la detención preventiva, el juicio se entiende comenzado con la juramentación preliminar del jurado o cuando juramenta el primer testigo en casos de juicios por tribunal de derecho. *Pueblo v. Paonesa Arroyo, supra,* pág. 212.

Ahora bien, es importante diferenciar la detención preventiva y el derecho a juicio rápido. Como mencionamos, la cláusula de detención preventiva exige que el juicio se inicie dentro de un término de seis meses desde el encarcelamiento preventivo del imputado que no prestó fianza. *Ex Parte Ponce Ayala*, 179 DPR 18, 23 (2010). Por otro lado, el derecho a juicio rápido tiene el propósito de que el inicio del juicio no se afecte por dilaciones excesivas e irrazonables. A diferencia del derecho a juicio rápido, si se excede el término de detención preventiva, ello no conlleva la desestimación del caso criminal, sino que se libera al imputado y el caso continúa en la etapa en que se encuentre, como si la persona estuviera en libertad bajo fianza. *Pueblo v. Paonesa Arroyo, supra,* pág. 208-211.

Huelga mencionar que el Tribunal Supremo de Puerto Rico ha opinado que la protección constitucional sobre la detención preventiva no es absoluta. *Pueblo v. Aponte Ruperto*, 199 DPR 538, 549 (2018) (op. de conformidad), que cita a *Sánchez v. González*, 78 DPR 849, 858 (1955). Lógicamente, el remedio extraordinario no opera si ya ha comenzado el juicio. Véase, *Pueblo v. Díaz Alicea, supra.* Asimismo, la jurisprudencia ha identificado algunas circunstancias que se excluyen del cómputo de los seis meses; a saber: (1) cuando el acusado actúa ilegal o fraudulentamente para impedir el juicio; y (2) el tiempo que dure la determinación de no procesabilidad. *Pueblo v. Aponte Ruperto, supra*, págs. 547 y 549; *Sánchez v. González, supra*; *Ruiz v. Alcaide*, 155 DPR 492, 506 (2001).

Así, pues, el derecho cobijado por la cláusula de detención preventiva no puede ser objeto de rapto. De mediar las circunstancias antes expuestas, el imputado no podría reclamarlo. *Sánchez v. González, supra.* Además, en lo que atañe a este caso, tampoco procede para el cómputo del término de detención preventiva aquel periodo en que el imputado sumariado, a su vez, extingue una condena por concepto de una convicción previa.

> [L]a detención preventiva es el resultado de que una persona no pueda prestar la fianza que se le imponga. Esto, a pesar de que en este caso se le impuso una fianza, necesariamente presupone que la persona estaba en libertad al momento de su detención. Así, la detención preventiva tiene como propósito asegurar el manejo diligente del caso por parte del Estado y garantizar la comparecencia del acusado a través del procedimiento en su contra, de manera que se pueda garantizar la imposición de la condena que pueda recaer en su contra como resultado del proceso. Como un convicto que se encuentra extinguiendo una condena no tiene derecho a salir bajo fianza, no cabe hablar de que su detención es preventiva. La detención preventiva tiene como causa única que no se haya prestado la fianza, y presupone el derecho a estar libre al amparo de ésta. *Pueblo v. Torres Rodríguez,* 186 DPR 183, 195 (2012).

**III.**

En la causa presente, el señor Coss Carmona expone que el TPI erró al denegar su solicitud de *habeas corpus* al imputarle las demoras del proceso, sin que hayan mediado actuaciones ilegales o fraudulentas. El Procurador General plantea que el recurso debe desestimarse por consideraciones del Apéndice, en particular la omisión de incluir las regrabaciones del proceso. Salvaguardado lo anterior al TPI enviar los correspondientes enlaces de las audiencias y esta curia examinar los testimonios desfilados, el Recurrido sostiene que el TPI no erró, toda vez que hubo "máxima diligencia" por parte del Ministerio Público. Aduce que las dilaciones del proceso son únicamente atribuibles al señor Coss Carmona.

En este caso, el procedimiento de vista preliminar se extendió durante un año, mientras el Peticionario estuvo encarcelado: primero, como convicto; y luego, como sumariado. El retraso, en general, se debió a múltiples incidencias imputables al Peticionario, a su Defensa, a la pasividad del Ministerio Público y a la anuencia del TPI, el cual, a nuestro juicio, impartió un manejo inadecuado.[17] Obsérvese en la *Resolución* recurrida el resumen de las causas dilatorias, especialmente, a partir de junio de 2024. Por un lado, las estériles excusas de la Defensa que requirieron nuevas fechas para celebrar el proceso preliminar. Por otro, aun cuando el Ministerio Público siempre estuvo preparado, no se menciona que los Fiscales Calo Pérez y Vargas Echevarría hayan advertido al TPI del curso del término de la detención preventiva ni hayan protestado por el tiempo prolongado entre los señalamientos, de manera que se atendiera el proceso con premura.

No obstante, dichas circunstancias no ameritan inactivar la cláusula de detención preventiva que favorece al Peticionario por el

---

[17] En el *Informe sobre los Procesos Criminales en los Tribunales de Puerto Rico*, octubre de 2011, del Secretariado de la Conferencia Judicial y Notarial del Tribunal Supremo de Puerto Rico, a las págs. 39 y 70, se indicó lo siguiente:

De entrada, es necesario establecer que, para lograr un buen control de sala, es esencial el conocimiento de la ley y el ordenamiento procesal. El Juez o Jueza debe dictar órdenes correctas y razonables y debe exigir su cumplimiento [...]. El cumplimiento con las órdenes del tribunal queda bajo la directa responsabilidad y fiscalización del Juez o Jueza.

El control de sala se ve impactado por las suspensiones y por el problema de los conflictos en el calendario que dificultan la coordinación de los señalamientos. [...] Cuando participan múltiples abogados o abogadas, los conflictos de calendario surgen con mayor frecuencia, por lo que las dificultades para recalendarizar una vista suspendida incrementan.

Los calendarios de los litigantes, sin embargo, no pueden controlar el calendario del tribunal. El abogado o abogada que asume una representación legal tiene la obligación de atender con diligencia el caso y ello, entre otras cosas, significa tener disponibilidad de tiempo para representar pronta y adecuadamente a su cliente. De hecho, en ciertas ocasiones, la no disponibilidad de tiempo del abogado o abogada podría incluso justificar que el tribunal tome la medida extrema de descalificarle para intervenir en el caso.

.        .        .        .        .        .        .

[I]ndependientemente de la naturaleza del caso, las medidas de mayor ayuda para que los Jueces y Juezas resuelvan los casos en el menor tiempo posible y que a su vez, aumentarían la confianza de la ciudadanía en los procesos judiciales son las siguientes: (1) tener el control de la sala y del proceso, (2) eficiente manejo y estricto cumplimiento del calendario pautado, (3) obligar al cumplimiento con todas las órdenes del tribunal, y (4) demostrar en sala amplio conocimiento del derecho sustantivo y procesal y entendimiento cabal de los deberes éticos.

imperativo constitucional de su presunción de inocencia. Según esbozamos, la cláusula de detención preventiva es un derecho constitucional que madura por el lapso del tiempo, invalidado únicamente si media ilegalidad y el fraude de la persona imputada para producir la incapacidad del Ministerio Público a someterlo a juicio. Incluso, en el caso presente, si pudiéramos considerar que la demora fue causada intencionalmente con ese propósito por el Peticionario o sus abogados, lo cierto es que ni en las vistas celebradas ni en la *Resolución* recurrida se delimitan los hechos ilegales o fraudulentos, ni el tiempo no atribuible al periodo de detención preventiva ni se establece la prueba clara, robusta y convincente que sostenga la aplicación de la excepción.

Aquí, se abstrajo el hecho de que la vista preliminar, de origen estatutario, tiene como función básica determinar la existencia de causa probable para creer que se ha cometido un delito y que el imputado lo ha cometido. Como se sabe, el propósito es evitar que un ciudadano sea sometido arbitraria e injustificadamente a los rigores de un proceso criminal. Durante la vista preliminar, el Ministerio Público debe presentar prueba, legalmente admisible en un juicio plenario, sobre todos los elementos del delito y su conexión con el imputado.  Sin embargo, dicha vista no es un mini juicio ni un juicio preliminar, por lo que una vez queda establecida la probabilidad de la comisión de todos los elementos del delito y la conexión del imputado con éste, se justifica una determinación de causa probable para acusar. Una vez se emite la decisión, el proceso criminal continúa hacia la etapa de su adjudicación final, es decir, al juicio en su fondo, que es el momento culminante del procesamiento criminal y al que la Constitución de Puerto Rico se refiere de forma particular. (Citas suprimidas). *Pueblo v. Soler*, 163 DPR 180, 192 (2004); Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II.

Luego del examen del expediente que revisamos, incluyendo la totalidad de las regrabaciones de las vistas celebradas, es forzoso colegir que no se probaron actos ilegales o fraudulentos que impidieran que el juicio se celebrara dentro del término prescrito en nuestra Constitución, cuando el imputado se encuentra en detención preventiva. En el caso de autos, luego de estar celebrándose la vista preliminar alrededor de seis meses, el 24 de junio de 2024, el señor Coss Carmona extinguió la pena carcelaria impuesta. Por ende, al no prestar la fianza señalada allá para el 13 de diciembre de 2023, y continuar recluido en prisión en calidad de sumariado, se activó el término de seis meses dispuesto en la cláusula de detención preventiva. Al 26 de diciembre de 2024, cuando solicitó el *habeas corpus*, el plazo semestral ya había expirado.

Nótese que esta disposición de entronque constitucional aspira, por un lado, asegurar la presencia del acusado en el juicio y, por el otro, no castigarlo anticipadamente por los delitos imputados por los cuales se le presume inocente. Ante la situación incontrovertida de que el peticionario está detenido en prisión preventiva desde el 24 de junio de 2024 y no haberse demostrado la comisión de actuaciones ilegales y fraudulentas, correspondía al TPI declarar ha lugar el auto de *habeas corpus* presentado por el Peticionario, imponer medidas cautelares y ordenar su excarcelación.

Al respecto, resulta menester indicar que el Estado tiene un interés apremiante en proteger a la ciudadanía, así como la facultad para garantizar que el imputado comparecerá al juicio. En ese sentido, el TPI ostenta autoridad para tomar todas las medidas de protección social que entienda necesarias y condicionar la libertad de la persona imputada de delito. La Defensa del señor Coss

Carmona así lo reconoció en varias instancias durante las audiencias.

En la causa de marras, de las vistas regrabadas examinadas, desfiló prueba de un sinnúmero de incumplimientos y desacatos por parte del señor Coss Carmona, así como la gravedad de los cargos por los que ha sido acusado. Por tanto, en consideración a la excarcelación del Peticionario, ordenamos al TPI, para que —en unión al PSAJ— indague sobre la idoneidad del tercer custodio y disponga todas aquellas medidas cautelares necesarias, **incluyendo la supervisión electrónica**, para proteger la seguridad pública y garantizar la comparecencia del señor Coss Carmona al juicio. Véase, Regla 218 de Procedimiento Criminal, 34 LPRA Ap. II.

**IV.**

Por los fundamentos expuestos, los cuales hacemos formar parte de esta *Sentencia,* se revoca la *Resolución* impugnada. En consecuencia, devolvemos el caso ante la consideración del Tribunal de Primera Instancia, Sala de Fajardo, para la continuación de los procedimientos de conformidad con lo aquí expuesto.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.  El Juez Sánchez Báez disiente sin expresión escrita.


                                   Lcda. Lilia M. Oquendo Solís
                              Secretaria del Tribunal de Apelaciones